[No. F048799. Fifth Dist. Nov. 1, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSHUA MARETE MUTUMA, Defendant and Appellant.

COUNSEL

Meredith J. Watts, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Stan Cross and Susan J. Orton, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WISEMAN, J.**—Defendant Joshua Marete Mutuma challenges his conviction under Vehicle Code section 2800.2 for felony evasion of a peace officer by car.[1] He claims that the court did not properly submit to the jury the question of whether three traffic violations committed during the evasion showed willful and wanton disregard for the safety of persons or property, elevating the crime to felony status. We disagree. Following a recent decision of this court, we first hold that any three violations for which points are assessed against the driver's license under section 12810 are predicate offenses under section 2800.2 as a matter of law, so no jury findings were called for on that issue. Second, we address a question of first impression: If the claimed predicate offenses are not enumerated in section 12810 but arguably fall into a catchall provision of that section (subd. (f)), assessing one point for all violations "involving the safe operation of a motor vehicle upon the highway," must the jury decide whether the claimed predicate offenses satisfy that description, or is that a question of law for the judge? Our answer is that this is a question of law and there is no need for a jury determination. The catchall provision means simply that a point should be assessed for every traffic violation involving a motor vehicle, with specific, stated exceptions. Applying this rule, the trial judge should determine whether the violations asserted by the People are point violations and instruct the jury accordingly. That is what happened in this case.

We also reject defendant's contention that the jury instructions failed to convey the requirement that the predicate offenses must be proved beyond a reasonable doubt if relied on by the jury. The court's general reasonable-doubt instruction was adequate. The judgment is affirmed.

### *FACTUAL AND PROCEDURAL HISTORIES*

A Modesto police officer on patrol late one night received a dispatch describing defendant and his car and stating that they were involved in a possible robbery. It was not clear from the dispatch whether defendant was a perpetrator or a victim. Shortly after receiving the dispatch, the officer saw defendant's car drive by. Uniformed and at the wheel of a standard black-and-white patrol car, the officer activated his lights and attempted to pull defendant over. Defendant did not pull over. Soon, however, he stopped at a red light and the officer and officers in two other cars pulled up behind him. The first officer got out of his car and shouted to defendant to shut off his engine and hold his hands out of the window. Defendant instead sped away, with the light still red.

---

[1] Subsequent statutory references are to the Vehicle Code unless noted otherwise.

The three police cars pursued, at least two with their lights and sirens on. Defendant made a right turn onto a residential street, taking the turn wide because of his speed and driving in the opposing lane as he did so. The speed limit was 25 miles per hour, but the officer had to go about 50 miles per hour to catch up with defendant. Concluding that the chase had become a danger to the public, the officer then informed the dispatcher that he was giving up the pursuit. Defendant made a second wide turn, again driving into the opposing lane. Although he had terminated the pursuit, the officer continued driving in the same direction and watching defendant's car; he saw defendant sideswipe a parked car, damaging it. A short time later, defendant drove into a garage, where he was arrested. The chase lasted less than two minutes. Defendant was given tests for alcohol intoxication after his arrest.

The district attorney filed an information charging four counts: (1) felony evasion of a peace officer while operating a motor vehicle (§ 2800.2); (2) driving while under the influence of alcohol (§ 23152, subd. (a)); (3) driving with a blood-alcohol level of 0.08 percent or above (§ 23152, subd. (b)); and (4) departing the scene of an accident resulting in property damage without leaving written notice of his name and address or locating the owner (§ 20002). Counts 2 and 3 also alleged that defendant's blood-alcohol level was 0.20 percent or above and that he had a previous conviction of driving with a blood-alcohol level of 0.08 percent or above.

At trial, defendant testified that he knew he was drunk when he got in the car, but drove anyway to escape from some people who had attacked and tried to rob him. On this basis, defendant mounted a necessity defense to the drunk driving charges.

One factual scenario that can elevate evasion of a peace officer from a misdemeanor under section 2800.1 to a felony under section 2800.2 is the perpetrator's commission, during the chase, of three traffic violations that count for a point or points against the perpetrator's driver's license. (§ 2800.2, subd. (b).) At trial in this case, the People argued that the evidence showed three violations during the chase: making an unsafe turning movement (§ 22107); driving on the wrong side of the road (§ 21650); and violating the basic speed law (§ 22350).

The trial court gave the jury this instruction:

"Every person who flees or attempts to flee a pursuing peace officer in violation of Section 2800.1(a) and drives [the] pursued vehicle with a willful or wanton disregard for the safety of persons or property is guilty of a violation of Vehicle Code Section 2800.2(a), a felony.

"A willful or wanton disregard for the safety of persons or property also includes, but is not limited to, driving while fleeing or attempting to elude a

pursuing peace officer during which time the person driving commits three or more Vehicle Code violations such as Vehicle Code Section 21650, 22107 and 22350."

The court also read provisions of those three Vehicle Code sections:

"A turning movement as defined in Vehicle Code Section 22107[:] [No] person shall turn a vehicle from a direct course or move right or left upon a roadway until such movement can be made with reasonable safety.

"Basic speed law[, section] 22350[:] [N]o person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for weather, visibility, the traffic on, and the surface and the width of the highway, and in no event at a speed which endangers the safety of person[s] or property.

"Right side of the roadway, [section] 21650. Upon all highways a vehicle shall be driven upon the right half of the roadway."

The jury found defendant guilty of felony evasion and not guilty of the remaining charges. The court sentenced him to three years' probation, including 180 days in county jail.

## *DISCUSSION*

Defendant argues that the jury instructions just quoted were erroneous because (1) they did not direct the jury to determine whether the three traffic violations amounted to willful and wanton disregard, and (2) they did not specifically say the jury had to find that the three violations occurred beyond a reasonable doubt.[2] As we will explain, the instructions were adequate.

■ At trial, defendant did not object to the instructions or request different ones, but a trial court in a criminal case is required—with or without a request—to give correct jury instructions on the general principles of law relevant to issues raised by the evidence. (*People v. Michaels* (2002) 28 Cal.4th 486, 529–530 [122 Cal.Rptr.2d 285, 49 P.3d 1032].) Further, an appellate court can address an incorrect instruction to which no objection was made at trial if the instruction impaired the defendant's substantial rights. (Pen. Code, § 1259.)

---

[2] In his reply brief, defendant appears to withdraw the first argument and rely only on the second, saying he contends that the error "was in simply . . . not asking the jury to make affirmative findings that [his] driving violated [the three Vehicle Code sections], beyond a reasonable doubt." Out of an abundance of caution, we will address the first argument in spite of this.

I. *Point violations and willful and wanton disregard*

■     Under section 2800.1, it is a misdemeanor to flee willfully in a motor vehicle from a uniformed peace officer in a marked patrol car with lights flashing and siren sounding. Under section 2800.2, the offense is a felony if the evader drives with willful or wanton disregard for the safety of persons or property. The statute further provides: "For purposes of this section, a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under Section 12810 occur, or damage to property occurs." (§ 2800.2, subd. (b).)

■     Section 12810 provides that several specifically enumerated viola-tions, none of which are at issue here, are assigned one or two points. (§ 12810, subds. (a)–(e), (h).) It also contains the catchall clause providing that, with certain exceptions, "any other traffic conviction involving the safe operation of a motor vehicle upon the highway shall be given a value of one point." (§ 12810, subd. (f).)

The court instructed the jury that violations of sections 21650, 22107, and 22350 amounted to a willful and wanton disregard for persons or property within the meaning of section 2800.2. Defendant claims he "was entitled to have the jury decide whether these Vehicle Code offenses constituted 'willful and wanton' . . . driving, thereby elevating the offense from a misdemeanor to felony."

■     This claim raises two separate questions. First, assuming the three violations were point violations, did the jury have to decide whether they added up to willful and wanton disregard, or do any three point violations constitute willful and wanton disregard as a matter of law? We recently held that any three point violations suffice as a matter of law, following two other Courts of Appeal that did the same. (*People v. Laughlin* (2006) 137 Cal.App.4th 1020, 1025, 1027–1028 [40 Cal.Rptr.3d 737], citing *People v. Pinkston* (2003) 112 Cal.App.4th 387 [5 Cal.Rptr.3d 274] & *People v. Williams* (2005) 130 Cal.App.4th 1440 [30 Cal.Rptr.3d 909].) The rule set forth in section 2800.2, subdivision (b)—that three or more point violations constitute willful and wanton disregard—"is not a mandatory rebuttable presumption but is instead a rule of substantive law." (*People v. Laughlin, supra,* 137 Cal.App.4th at p. 1025.) Three point violations are willful and wanton disregard by definition, so there is nothing other than their existence for the jury to find.

The second question is this: Where, as here, the claimed violations are not enumerated in section 12810, must the jury decide whether or not they fall

into the catchall provision because they "involv[e] the safe operation of a motor vehicle," as the statute phrases it? (§ 12810, subd. (f).) Or is that also a question the court must answer as a matter of law? As we will explain, it is a question of law for the court's determination.

The statutory language is somewhat obscure. What is a violation "involving the safe operation of a motor vehicle"? More specifically, does the application of this language require findings about how safe or unsafe the driving in question was?

In interpreting a statute, our objective is "to ascertain and effectuate legislative intent." (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1007 [239 Cal.Rptr. 656, 741 P.2d 154].) To the extent that the language in the statute may be unclear, we look to legislative history and the statutory scheme of which the statute is a part. (*People v. Bartlett* (1990) 226 Cal.App.3d 244, 250 [276 Cal.Rptr. 460].) We look to the entire statutory scheme in interpreting particular provisions "so that the whole may be harmonized and retain effectiveness." (*Clean Air Constituency v. California State Air Resources Bd.* (1974) 11 Cal.3d 801, 814 [114 Cal.Rptr. 577, 523 P.2d 617].) "In the end, we ' "must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' " (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57].)

Applying these principles, we can rule out the conclusion that the catchall provision requires a finding of *unsafe* operation of a motor vehicle. If the statute said "unsafe" instead of "safe," we might well hold that the question of whether the driving at issue was unsafe was a question for the jury. But if the Legislature had meant "unsafe," it could easily have used that word.

We can also rule out the opposite conclusion: that an unenumerated violation only counts for a point if the driving involved was safe. The literal words of the statute may seem to suggest this, but it cannot be correct, for it would be absurd to make evasion a felony based on unenumerated violations only where the perpetrator committed them safely.

If no finding of safety or unsafety is called for, does the statute mean simply that a point is assessed for any traffic violation involving the operation of a motor vehicle, regardless of safety or unsafety? Provisions of the larger statutory scheme point to an affirmative answer. The complete text of the catchall provision, section 12810, subdivision (f), states: "Except as provided in subdivision (i), any other traffic conviction involving the safe operation of a motor vehicle upon the highway shall be given a value of one point."

Subdivision (i) then lists several sections the violation of which does not count for a point. These include section 40001, subdivision (b)(1)—driving an unregistered car—but only if "the driver is not the owner of the vehicle." (§ 12810, subd. (i)(1).) It follows that if the driver of an unregistered car *is* the owner, the offense of driving it *is* assessed a point.

■   There is no reason why an unregistered car cannot be driven safely. The statute thus contemplates that traffic violations involving the operation of a motor vehicle, including those not related to safety, are worth a point unless otherwise stated.

The question of whether an alleged violation was a traffic violation involving the operation of a motor vehicle has two parts: Was it a traffic violation? And did it involve the operation of a motor vehicle? The first part is undoubtedly a question of law. Whether an offense is a traffic offense or something else depends on what statute has been violated, not on any of the circumstances of the particular violation.

■   The second part is also a question of law. Whether a traffic offense involves the operation of a motor vehicle depends simply on whether driving is part of its definition—driving on the wrong side of the road, driving over the speed limit, driving an unregistered car, and so on. The court therefore determines whether a traffic offense involves the operation of a motor vehicle by reading the statute allegedly violated, not by examining the evidence of the particular violation.

■   For all these reasons, the court was correct not to give a separate instruction directing the jury to decide (a) whether or not the three alleged violations constituted traffic violations involving the safe operation of a motor vehicle, or (b) whether or not the violations constituted willful and wanton disregard for the safety of persons or property. Those were questions of law properly resolved by the trial judge.

Defendant also takes issue with the court's omission of any instruction regarding elevation of the evasion offense to felony status by means of proving property damage. (§ 2800.2, subd. (b).) The court did not mention this, even though there was evidence of property damage (the sideswiped car), and both counsel discussed it in their closing statements. Defendant argues that this omission supports his claim of prejudicial instructional error. We do not see how. Defendant could not have been harmed by the court's failure to tell the jury that the property damage evidence was one more basis on which it could find him guilty. Defendant does not claim that counsel misstated the law or that a unanimity instruction was required. The court's omission of a property-damage instruction was not prejudicial error.

## II. *Reasonable doubt*

■ Defendant also contends that the jury should have been told that, if it was relying on the three traffic violations to return a felony verdict, it had to find each violation beyond a reasonable doubt. We disagree. The court gave standard instructions on the reasonable-doubt standard of proof. Defendant has cited no authority, and we know of none, supporting the view that a trial court must, on its own motion, give additional reasonable-doubt instructions whenever underlying predicate offenses are part of the proof of a crime. In the absence of that authority, the controlling consideration is that " ' "[t]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." ' " (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1248 [74 Cal.Rptr.2d 212, 954 P.2d 475].) Here the entire charge included correct reasonable-doubt instructions and there is no reason to suppose the jury failed to apply them when considering whether the predicate violations existed.

In his reply brief, defendant argues that, even apart from the issue of reasonable doubt, the instructions were erroneous because they did not expressly state that the jury was required to find the predicate offenses happened at all if it was going to rely on them. This contention has no merit. The court told the jury that the predicate offenses could show willful and wanton disregard, an element of the crime. Before this, it had already told the jury that "each fact that is essential to complete a set of circumstances necessary to establish the defendant's guilt . . . must be proved beyond a reasonable doubt." There is no requirement that when the court sets forth the elements of the charged offenses it must repeat the point that each element must be proved.

## III. Apprendi

In addition to claiming ordinary instructional error, defendant says the court's instructions contravened the Supreme Court's ruling in *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] by removing the finding of a factual element of the offense from the jury's purview. This is not so for the same reasons the instructions were not erroneous. The question of whether the three predicate offenses existed was submitted to the jury. The questions of whether these were point violations and whether three point violations add up to willful and wanton disregard were questions of law properly resolved by the trial judge. The instructions withdrew no factual finding from the jury.

## *DISPOSITION*

The judgment is affirmed.

Harris, Acting P. J., and Hill, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 21, 2007, S148695.