Filed 9/13/17

CERTIFIED FOR PARTIAL PUBLICATION[*]

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JASON THOR LEONARD,<br><br>    Defendant and Appellant. | D070980<br><br>(Super. Ct. No. SCN337203) |

APPEAL from a judgment of the Superior Court of San Diego County, Blaine K. Bowman, Judge.  Affirmed.

Patrick J. Hennessey, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Collette C. Cavalier and Arlene A. Sevidal, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*]    Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part I.

A jury convicted Jason Thor Leonard of robbery (Pen. Code, § 211), assault with a deadly weapon (*id.*, § 245, subd. (a)(1)), hit and run with injury (Veh. Code,[1] § 20001, subd. (a)), exhibiting a deadly weapon other than a firearm (Pen. Code, § 417, subd. (a)(1)), vandalism (*id.*, § 594, subd. (b)(1)), reckless driving while evading a peace officer (§ 2800.2, subd. (a)), and two counts of possession of a leaded cane or baton (Pen. Code, § 22210). As to the assault, the jury found that Leonard had personally used a dangerous or deadly weapon, a vehicle, in the commission of the offense. (Pen. Code, § 1192.7, subd. (c)(23); § 13351.5.) The trial court sentenced Leonard to six years eight months in prison.[2]

Leonard appeals. He contends (1) the court erred by excluding impeachment evidence against a prosecution witness and (2) the evidence does not support his conviction for reckless driving while evading a peace officer because he was not "assigned a traffic violation point" based on his conduct, within the meaning of section 2800.2, subdivision (a). We disagree with both contentions. In the unpublished portion of this opinion, we conclude the court properly excluded the proffered impeachment evidence under Evidence Code section 352. In the published portion, we conclude the statute defining reckless driving while evading a peace officer does not require evidence that Leonard was personally assessed traffic violation points. We therefore affirm.

---

[1]   All statutory references are to the Vehicle Code unless otherwise indicated.

[2]   At the same time, the court sentenced Leonard to a consecutive sentence of eight months following revocation of parole in an unrelated matter. That matter is not at issue in this appeal.

FACTS

The charged crimes cover three separate incidents, which we will discuss in turn. For purposes of this section, we state the evidence in the light most favorable to the judgment. (See *People v. Osband* (1996) 13 Cal.4th 622, 690; *People v. Dawkins* (2014) 230 Cal.App.4th 991, 994.) Additional facts will be discussed where relevant in the following section.

On September 10, 2014, Leonard entered a Kohl's department store in San Marcos, California. Two of Kohl's loss prevention officers, Stephen Earner and Rosa Harris, noticed that Leonard was acting suspiciously. Leonard appeared to take several items from the shelf, roll them up, and place them under his shirt in his waistband. Leonard left the store, and Earner and Harris pursued him into the parking lot. Leonard turned and pepper sprayed them. Leonard got into a car and drove away. Earner estimated that Leonard took approximately $85 worth of merchandise.

The next day, Leonard went to a restaurant, Station Pizza, also in San Marcos. Caroline Fox, an owner of Station Pizza, recognized Leonard from an earlier incident when Leonard used the restaurant's restroom without buying anything. This time, Leonard again went straight to the restroom. When he came out, Fox told him that the restrooms were for customers only and asked for two dollars. Leonard pulled out a metal baton and extended it. He insulted Fox and threatened to "com[e] back to break your windows tonight." Leonard left the restaurant, and Fox followed. Fox saw Leonard swerve through the parking lot and drive quickly towards her. Leonard's car hit Fox, and he drove away without stopping. Fox suffered a broken foot and various scrapes.

That night, Leonard threw rocks through the front door and front window of the Station Pizza restaurant. One of the rocks had two dollar bills wrapped around it with red tape. Later, Jeffery Jenkins, a California Highway Patrol officer, saw Leonard driving over 100 miles per hour along a stretch of highway where the speed limit was 65 miles per hour. Jenkins pursued Leonard, who exited the highway into a residential area. Leonard ran a stop sign and sped through the residential area, where the speed limit was 25 miles per hour, at approximately 45 to 50 miles per hour. Several times Leonard crossed the double yellow line separating him from oncoming traffic. Leonard ran another stop sign before eventually pulling over. When officers searched the car, they found an expandable baton. Officers later found red masking tape as well.

## DISCUSSION

### I

At trial, Earner admitted he had made mistakes in the past in his reports about suspicious activities at Kohl's. Earner testified about one such instance, after the incident involving Leonard, when he believed a theft had occurred at Kohl's. In that instance, Earner monitored a surveillance camera that showed an individual (not Leonard) pick up a cell phone battery pack, walk down an aisle, place the empty packaging for the battery pack on a rack, and leave Kohl's. Earner believed the individual had concealed the battery pack on his person and walked out with it. In his report to police, however, Earner said he saw the individual conceal the battery pack. Earner testified that the language in the report was a mistake. Earner told the investigating sheriff's deputy, Ryan

4

Murphy, about the mistake. But Murphy told Earner that he believed Earner was being dishonest or untruthful. Earner denied admitting to Murphy that he lied in the report.

Leonard sought to call Murphy to testify about his interactions with Earner. Leonard's counsel told the court that Murphy would testify that Earner told him directly that he had seen the individual conceal the battery pack. It was only after Murphy confronted him that Earner admitted he was mistaken. Leonard's counsel said Murphy wrote in a police report that Earner lied about the concealment because he was angry the individual had gotten away. In a pretrial filing, the prosecution explained that Murphy recommended that Earner be charged with filing a false report under Penal Code section 148.5, subdivision (a). The District Attorney declined to file charges.

The trial court believed Murphy's testimony was relevant. But its relevance was marginal, given what Earner had already admitted under cross-examination. The court concluded that any relevance was outweighed by the danger of jury confusion and undue consumption of time, since Murphy's testimony would require a trial-within-a-trial regarding the facts of the incident and Earner's statements to Murphy. It therefore excluded Murphy's testimony under Evidence Code section 352.

Leonard argues the court erred by excluding Murphy's testimony. Evidence Code section 352 provides as follows: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." "Trial courts enjoy ' "broad discretion" ' in deciding whether the probability of a substantial danger of prejudice

5

substantially outweighs probative value. [Citations.] A trial court's exercise of discretion 'will not be disturbed except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Holford* (2012) 203 Cal.App.4th 155, 167-168; see *People v. Minifie* (1996) 13 Cal.4th 1055, 1070.)

Leonard has not shown the court abused its discretion here. The court could reasonably find that Murphy's testimony was of marginal relevance, given Earner's admission that he had been mistaken multiple times in the past, including with respect to the incident involving Murphy, that his written report about the incident was contradicted by the video evidence, and that Murphy had accused him of being untruthful. And, despite its marginal relevance, Murphy's testimony would consume substantial trial time. The court's concern that Murphy's testimony would lead to a trial-within-a-trial was well-founded. Exploring the incident adequately could reasonably have involved additional witnesses, as well as documentary evidence such as the surveillance video and Earner's report. Moreover, since Leonard was not accused of participating in that incident, the jury may well have been confused by Murphy's testimony because it did not cover a charged offense and did not involve Leonard at all.

Leonard emphasizes the importance of Earner's testimony and the relevance of evidence tending to impeach him. But the trial court found Murphy's testimony relevant. The issue is whether, despite that relevance, it was properly excluded because its probative value was substantially outweighed by other concerns. Beyond his bare assertion that Murphy's testimony would have been short and would not have

6

inconvenienced the court or jurors, Leonard does not effectively address the court's finding to the contrary. He has not shown the trial court abused its discretion. Because we have determined the court did not err, we need not consider the question of prejudice.

II

Leonard contends the evidence does not support his conviction for reckless driving while evading a peace officer under section 2800.2, subdivision (a). The statute requires proof, among other things, that "the pursued vehicle [was] driven in a willful or wanton disregard for the safety of persons or property . . . ." (§ 2800.2, subd. (a).) The statute provides that "a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under Section 12810 occur, or damage to property occurs." (§ 2800.2, subd. (b).)

At trial, the prosecution offered testimony that Leonard committed at least three traffic violations while evading a California Highway Patrol officer, including crossing a solid double yellow line and failing to stop at a stop sign. The court instructed the jury on the elements of the offense, including its definition of "willful or wanton disregard for the safety of persons or property," using CALCRIM No. 2181. In pertinent part, the court stated, "Driving with willful or wanton disregard for the safety of persons or property includes, but is not limited to, causing damage to property while driving or committing three or more violations that are each assigned a traffic violation point." It

7

further instructed the jury that "[c]rossing the solid double yellow line and failing to stop at a stop sign are each assigned a traffic violation point."

Leonard claims that the evidence was insufficient because the prosecution did not show that *he* was assigned any traffic violation points, i.e., that he personally incurred traffic violation points as a result of his conduct in evading a peace officer. In other words, as Leonard argues, "In this case, there was no testimony before the jury establishing the violations as committed by [Leonard] did in fact result in points under the California Vehicle Code."

Leonard's argument raises a threshold issue regarding the meaning of the statute defining "willful or wanton disregard for the safety of persons or property" and whether it requires proof that Leonard actually incurred traffic violation points as a result of his conduct. It appears that no court has directly considered whether the statute imposes such a requirement.

This threshold issue is one of statutory interpretation, which we consider de novo. (*People v. Prunty* (2015) 62 Cal.4th 59, 71.) " 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning. [Citation.]' [Citation.] ' "When the language of a statute is clear, we need go no further." [Citation.] But where a statute's terms are unclear or ambiguous, we may "look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public

8

policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." ' " (*People v. Harrison* (2013) 57 Cal.4th 1211, 1221-1222.)

We begin with the statutory language. It states that a defendant acts with willful or wanton disregard for the safety of persons or property when, among other things, he "driv[es] while fleeing or attempting to elude a pursuing peace officer during which time . . . three or more violations that are assigned a traffic violation point count under Section 12810 occur . . . ." (§ 2800.2, subd. (b).) Section 12810 classifies various violations according to their traffic violation point count, including a general provision imposing a value of one point, with some exceptions, on "any other traffic conviction involving the safe operation of a motor vehicle upon the highway . . . ." (§ 12810, subd. (f).) The traffic violation point counts listed in the statute are used to determine whether a driver who incurs such points is a presumptively negligent operator for purposes of the issuance, suspension, and renewal of drivers' licenses by the Department of Motor Vehicles. (§ 12810.5.)

Our reading of the language defining the offense of reckless driving while evading a peace officer does not support Leonard's position that he must have actually incurred traffic violation points himself. Instead, the phrase "that are assigned a traffic violation point count under Section 12810" describes the type of violation that may support a finding of willful or wanton conduct. The structure of the statute supports our interpretation. Grammatically, the phrase modifies the word "violation"; the defendant is not mentioned. And the fact that a "point count," not points themselves, are what must be "assigned . . . under Section 12810" shows that the Vehicle Code's classification of

9

violations according to point count is the relevant factor, not whether Leonard himself was "assigned" points by the Department of Motor Vehicles or some other entity.

Although it does not consider the precise question presented here, *People v. Mutuma* (2006) 144 Cal.App.4th 635 (*Mutuma*) supports this interpretation. In *Mutuma*, the court considered the following questions: "Where, as here, the claimed violations are not enumerated in section 12810, must the jury decide whether or not they fall into the catchall provision because they 'involv[e] the safe operation of a motor vehicle,' as the statute phrases it? (§ 12810, subd. (f).) Or is that also a question the court must answer as a matter of law?" (*Mutuma*, at pp. 641-642.) *Mutuma* concluded that it was a question of law, and the trial court properly instructed the jury that the claimed violations, if found true, satisfied the statute's willful and wanton conduct requirement. (*Id.* at p. 643.) Notably, for our purposes, *Mutuma* focused on the existence and classification of the claimed violations under the Vehicle Code, not whether the defendant actually incurred any points as the result of the violations. As *Mutuma* explained, "Three point violations are willful and wanton disregard by definition, so there is nothing other than their existence for the jury to find." (*Id.* at p. 641.)

Leonard's substantial evidence argument relies on his interpretation of the statute as requiring proof that he was actually assigned traffic violation points as a result of his conduct while evading a police officer. Because we have rejected that interpretation, Leonard's argument must fail. Leonard does not contend, for example, that the evidence did not support a finding that he committed three or more violations that are assigned traffic violation point counts under the Vehicle Code. Although Leonard hypothesizes

10

that there may be situations where crossing a double yellow line would not be a Vehicle Code violation, he has not attempted to show the evidence was insufficient to the jury to find such a violation here.  He has therefore not shown that the evidence does not support his conviction.[3]

DISPOSITION

The judgment is affirmed.


HUFFMAN, J.

WE CONCUR:


BENKE, Acting P. J.


AARON, J.

---

[3]     In addition, to the extent Leonard argues the court erred by instructing the jury that crossing a double yellow line and running a stop sign are each assigned a traffic violation point under the Vehicle Code, his argument was considered and rejected in *Mutuma, supra*, 144 Cal.App.4th at page 643.  We reject it for the same reasons.