HUFFMAN, J.
*277 A jury convicted Jason Thor Leonard of robbery ( Pen. Code, § 211 ), assault with a deadly weapon (id ., § 245, subd. (a)(1)), hit and run with injury ( Veh. Code,[1] § 20001, subd. (a) ), exhibiting a deadly weapon other than a firearm ( Pen. Code, § 417, subd. (a)(1) ), vandalism (id. , § 594, *278 subd. (b)(1)), reckless driving while evading a peace officer (§ 2800.2, subd. (a)), and two counts of possession of a leaded cane or baton ( Pen. Code, § 22210 ). As to the assault, the jury found that Leonard had personally used a *870 dangerous or deadly weapon, a vehicle, in the commission of the offense. ( Pen. Code, § 1192.7, subd. (c)(23) ; § 13351.5.) The trial court sentenced Leonard to six years eight months in prison.[2]
Leonard appeals. He contends (1) the court erred by excluding impeachment evidence against a prosecution witness and (2) the evidence does not support his conviction for reckless driving while evading a peace officer because he was not "assigned a traffic violation point" based on his conduct, within the meaning of section 2800.2, subdivision (a). We disagree with both contentions. In the unpublished portion of this opinion, we conclude the court properly excluded the proffered impeachment evidence under Evidence Code section 352. In the published portion, we conclude the statute defining reckless driving while evading a peace officer does not require evidence that Leonard was personally assessed traffic violation points. We therefore affirm.
FACTS
The charged crimes cover three separate incidents, which we will discuss in turn. For purposes of this section, we state the evidence in the light most favorable to the judgment. (See People v. Osband (1996) 13 Cal.4th 622, 690, 55 Cal.Rptr.2d 26, 919 P.2d 640 ; People v. Dawkins (2014) 230 Cal.App.4th 991, 994, 179 Cal.Rptr.3d 101.) Additional facts will be discussed where relevant in the following section.
On September 10, 2014, Leonard entered a Kohl's department store in San Marcos, California. Two of Kohl's loss prevention officers, Stephen Earner and Rosa Harris, noticed that Leonard was acting suspiciously. Leonard appeared to take several items from the shelf, roll them up, and place them under his shirt in his waistband. Leonard left the store, and Earner and Harris pursued him into the parking lot. Leonard turned and pepper sprayed them. Leonard got into a car and drove away. Earner estimated that Leonard took approximately $85 worth of merchandise.
The next day, Leonard went to a restaurant, Station Pizza, also in San Marcos. Caroline Fox, an owner of Station Pizza, recognized Leonard from an earlier incident when Leonard used the restaurant's restroom without buying anything. This time, Leonard again went straight to the restroom. When he came out, Fox told him that the restrooms were for customers only *279 and asked for two dollars. Leonard pulled out a metal baton and extended it. He insulted Fox and threatened to "com[e] back to break your windows tonight." Leonard left the restaurant, and Fox followed. Fox saw Leonard swerve through the parking lot and drive quickly towards her. Leonard's car hit Fox, and he drove away without stopping. Fox suffered a broken foot and various scrapes.
That night, Leonard threw rocks through the front door and front window of the Station Pizza restaurant. One of the rocks had two dollar bills wrapped around it with red tape. Later, Jeffery Jenkins, a California Highway Patrol officer, saw Leonard driving over 100 miles per hour along a stretch of highway where the speed limit was 65 miles per hour. Jenkins pursued Leonard, who exited the highway into a residential area. Leonard ran a stop sign and sped through the residential area, where the speed limit was 25 miles per hour, at approximately 45 to 50 miles per hour. Several times Leonard crossed the *871 double yellow line separating him from oncoming traffic. Leonard ran another stop sign before eventually pulling over. When officers searched the car, they found an expandable baton. Officers later found red masking tape as well.
DISCUSSION
I**
II
Leonard contends the evidence does not support his conviction for reckless driving while evading a peace officer under section 2800.2, subdivision (a). The statute requires proof, among other things, that "the pursued vehicle [was] driven in a willful or wanton disregard for the safety of persons or property...." (§ 2800.2, subd. (a).) The statute provides that "a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under Section 12810 occur, or damage to property occurs." (§ 2800.2, subd. (b).)
At trial, the prosecution offered testimony that Leonard committed at least three traffic violations while evading a California Highway Patrol officer, including crossing a solid double yellow line and failing to stop at a stop *280 sign. The court instructed the jury on the elements of the offense, including its definition of "willful or wanton disregard for the safety of persons or property," using CALCRIM No. 2181. In pertinent part, the court stated, "Driving with willful or wanton disregard for the safety of persons or property includes, but is not limited to, causing damage to property while driving or committing three or more violations that are each assigned a traffic violation point." It further instructed the jury that "[c]rossing the solid double yellow line and failing to stop at a stop sign are each assigned a traffic violation point."
Leonard claims that the evidence was insufficient because the prosecution did not show that he was assigned any traffic violation points, i.e., that he personally incurred traffic violation points as a result of his conduct in evading a peace officer. In other words, as Leonard argues, "In this case, there was no testimony before the jury establishing the violations as committed by [Leonard] did in fact result in points under the California Vehicle Code."
Leonard's argument raises a threshold issue regarding the meaning of the statute defining "willful or wanton disregard for the safety of persons or property" and whether it requires proof that Leonard actually incurred traffic violation points as a result of his conduct. It appears that no court has directly considered whether the statute imposes such a requirement.
This threshold issue is one of statutory interpretation, which we consider de novo. ( People v. Prunty (2015) 62 Cal.4th 59, 71, 192 Cal.Rptr.3d 309, 355 P.3d 480.) " 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning. [Citation.]' [Citation.] ' "When the language of a statute is clear, we need go no further." [Citation.] But where a statute's terms are unclear or ambiguous, we may "look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the *872 legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." ' " ( People v. Harrison (2013) 57 Cal.4th 1211, 1221-1222, 164 Cal.Rptr.3d 167, 312 P.3d 88.)
We begin with the statutory language. It states that a defendant acts with willful or wanton disregard for the safety of persons or property when, among other things, he "driv[es] while fleeing or attempting to elude a pursuing peace officer during which time ... three or more violations that are assigned a traffic violation point count under Section 12810 occur...." (§ 2800.2, subd. (b).) Section 12810 classifies various violations according to *281 their traffic violation point count, including a general provision imposing a value of one point, with some exceptions, on "any other traffic conviction involving the safe operation of a motor vehicle upon the highway...." (§ 12810, subd. (f).) The traffic violation point counts listed in the statute are used to determine whether a driver who incurs such points is a presumptively negligent operator for purposes of the issuance, suspension, and renewal of drivers' licenses by the Department of Motor Vehicles. (§ 12810.5.)
Our reading of the language defining the offense of reckless driving while evading a peace officer does not support Leonard's position that he must have actually incurred traffic violation points himself. Instead, the phrase "that are assigned a traffic violation point count under Section 12810" describes the type of violation that may support a finding of willful or wanton conduct. The structure of the statute supports our interpretation. Grammatically, the phrase modifies the word "violation"; the defendant is not mentioned. And the fact that a "point count," not points themselves, are what must be "assigned ... under Section 12810" shows that the Vehicle Code's classification of violations according to point count is the relevant factor, not whether Leonard himself was "assigned" points by the Department of Motor Vehicles or some other entity.
Although it does not consider the precise question presented here, People v. Mutuma (2006) 144 Cal.App.4th 635, 50 Cal.Rptr.3d 547 ( Mutuma ) supports this interpretation. In Mutuma , the court considered the following questions: "Where, as here, the claimed violations are not enumerated in section 12810, must the jury decide whether or not they fall into the catchall provision because they 'involv[e] the safe operation of a motor vehicle,' as the statute phrases it? (§ 12810, subd. (f).) Or is that also a question the court must answer as a matter of law?" ( Mutuma , at pp. 641-642, 50 Cal.Rptr.3d 547.) Mutuma concluded that it was a question of law, and the trial court properly instructed the jury that the claimed violations, if found true, satisfied the statute's willful and wanton conduct requirement. ( Id. at p. 643, 50 Cal.Rptr.3d 547.) Notably, for our purposes, Mutuma focused on the existence and classification of the claimed violations under the Vehicle Code, not whether the defendant actually incurred any points as the result of the violations. As Mutuma explained, "Three point violations are willful and wanton disregard by definition, so there is nothing other than their existence for the jury to find." ( Id. at p. 641, 50 Cal.Rptr.3d 547.)
Leonard's substantial evidence argument relies on his interpretation of the statute as requiring proof that he was actually assigned traffic violation points as a result of his conduct while evading a police officer. Because we have rejected that interpretation, Leonard's argument must fail. Leonard does not contend, for example, that the evidence did not support *873 a finding that he committed three or more violations that are assigned traffic violation point *282 counts under the Vehicle Code. Although Leonard hypothesizes that there may be situations where crossing a double yellow line would not be a Vehicle Code violation, he has not attempted to show the evidence was insufficient to the jury to find such a violation here. He has therefore not shown that the evidence does not support his conviction.[3]
DISPOSITION
The judgment is affirmed.
WE CONCUR:
BENKE, Acting P.J.
AARON, J.

All statutory references are to the Vehicle Code unless otherwise indicated.

At the same time, the court sentenced Leonard to a consecutive sentence of eight months following revocation of parole in an unrelated matter. That matter is not at issue in this appeal.

See footnote *, ante.

In addition, to the extent Leonard argues the court erred by instructing the jury that crossing a double yellow line and running a stop sign are each assigned a traffic violation point under the Vehicle Code, his argument was considered and rejected in Mutuma, supra, 144 Cal.App.4th at page 643, 50 Cal.Rptr.3d 547. We reject it for the same reasons.