[No. F047242. Fifth Dist. Mar. 21, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHNNY HOWARD LAUGHLIN, Defendant and Appellant.

---

COUNSEL

Matthew Alger, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Stephen G. Herndon, Harry Joseph Colombo and Alison Elle Aleman, Deputy Attorneys General, for Plaintiff and Respondent.

---

OPINION

VARTABEDIAN, Acting P. J.—Defendant Johnny Howard Laughlin was convicted by jury of driving with a willful or wanton disregard for the safety of persons or property while fleeing from pursuing peace officers in violation of Vehicle Code section 2800.2.[1] In addition, the trial court found that defendant had suffered three prior prison terms. He appeals, claiming the Legislature's addition of subdivision (b) to section 2800.2 created an unconstitutional mandatory presumption by allowing a finding of willful or wanton disregard based solely on a finding the defendant committed three traffic offenses resulting in violation points, thus relieving the prosecution of its burden of proving willful or wanton disregard. We determine that subdivision (b) does not create an impermissible mandatory presumption. Instead, the statute provides a definition of substantive law.

## FACTS

California Highway Patrol officer Jose Meza was on duty, in uniform, driving his marked patrol car when he saw defendant driving a vehicle without wearing his seatbelt. Officer Meza positioned himself behind defendant's vehicle and activated his lights. Instead of stopping, defendant drove away.

---

[1] All future code references are to the Vehicle Code unless otherwise noted.

Officer Meza activated more lights and put his siren on. Defendant continued to evade Meza. Defendant failed to stop at numerous stop signs, drove through a red traffic light, and exceeded the speed limit. At the stop lights, drivers in the area were forced to take evasive action.

Defendant drove his vehicle off the road onto a private dirt road. Meza had a difficult time following him because of reduced visibility and the roughness of the terrain. California Highway Patrol officer Joseph Janzen joined in the pursuit of defendant. Defendant returned to the public road. He drove through another intersection with a stop sign without stopping. There were children in the area.

Defendant again drove off the public road into a dirt area. Neither Janzen nor Meza was able to follow him. Deputy Sheriff Mark Skidmore was driving a four-wheel-drive vehicle and began looking for defendant and his vehicle. Skidmore found defendant's truck. A police dog found defendant hiding in the bushes near his vehicle, where officers arrested him.

## DISCUSSION

### I. Characterization of Section 2800.2, Subdivision (b)

Section 2800.2 defines the crime of driving in a willful or wanton disregard for the safety of persons or property while fleeing from a pursuing peace officer. In 1996, subdivision (b) was added to this section.

Section 2800.2 provides: "(a) If a person flees or attempts to elude a pursuing peace officer in violation of Section 2800.1 and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property, the person driving the vehicle, upon conviction, shall be punished by imprisonment in the state prison, or by confinement in the county jail for not less than six months nor more than one year. The court may also impose a fine of not less than one thousand dollars ($1,000) nor more than ten thousand dollars ($10,000), or may impose both that imprisonment or confinement and fine.

"(b) For purposes of this section, a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under Section 12810 occur, or damage to property occurs."

Defendant contends that subdivision (b) of section 2800.2 creates an improper mandatory presumption because it relieves the prosecution of its burden of proving the ultimate fact of willful or wanton disregard. Because the finding that defendant committed three or more violations that are assigned a traffic point count does not necessarily compel the conclusion that the defendant acted with willful or wanton disregard for the safety of persons or property, defendant claims that subdivision (b) creates an impermissible mandatory presumption.

■ "A mandatory presumption tells the trier of fact that if a specified predicate fact has been proved, the trier of fact *must* find that a specified factual element of the charge has been proved, unless the defendant has come forward with evidence to rebut the presumed connection between the two facts. [Citations.] In criminal cases, a mandatory presumption offends constitutional principles of due process of law because it relieves the prosecutor from having to prove each element of the offense beyond a reasonable doubt. [Citations.]" (*People v. Williams* (2005) 130 Cal.App.4th 1440, 1444–1445 [30 Cal.Rptr.3d 909].) "The prosecution 'may not rest its case entirely on a [mandatory rebuttable] presumption unless the fact proved is sufficient to support the inference of guilt beyond a reasonable doubt.' [Citation.]" (*People v. McCall* (2004) 32 Cal.4th 175, 183 [8 Cal.Rptr.3d 337, 82 P.3d 351], brackets in original.)

An example of an impermissible mandatory presumption is contained in *Carella v. California* (1989) 491 U.S. 263 [105 L.Ed.2d 218, 109 S.Ct. 2419]. Carella was convicted of grand theft for failure to return a rented car. At the time of his conviction, section 10855 provided, "Whenever any person who has leased or rented a vehicle wilfully and intentionally fails to return the vehicle to its owner within five days after the lease or rental agreement has expired, that person shall be presumed to have embezzled the vehicle." Penal Code section 484, subdivision (b) provided in part that "intent to commit theft by fraud is presumed if one who has leased or rented the personal property of another pursuant to a written contract fails to return the personal property to its owner within 20 days after the owner has made written demand . . . ."

The jury was instructed that if the conditions of section 10855 were met, the person " 'shall be presumed to have embezzled the vehicle.' " (*Carella v. California, supra,* 491 U.S. at p. 264.) The jury was also instructed that if the conditions of section 484, subdivision (b), were met, " 'Intent to commit theft by fraud is presumed . . . .' " (*Carella, supra,* at p. 264.)

The United States Supreme Court found these instructions violated the Fourteenth Amendment. "These mandatory directions directly foreclosed independent jury consideration of whether the facts proved established certain elements of the offenses with which Carella was charged. The instructions also relieved the State of its burden of proof articulated in *Winship* [*In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068]], namely proving by evidence every essential element of Carella's crime beyond a reasonable doubt." (*Carella v. California, supra,* 491 U.S. at p. 266.)

In *People v. Howard* (2005) 34 Cal.4th 1129 [23 Cal.Rptr.3d 306, 104 P.3d 107], the California Supreme Court recognized that the addition of subdivision (b) to section 2800.2 greatly expanded the meaning of the phrase "willful or wanton disregard for the safety of persons or property" to include conduct that ordinarily would not be considered particularly dangerous. (*Howard, supra,* at p. 1138.) While the court in *Howard* was concerned with whether a violation of section 2800.2 is an inherently dangerous felony for purposes of the second degree felony-murder rule, it found subdivision (b) to be expansive and listed violations that fell under the description contained in subdivision (b) that could be committed without endangering human life. These violations include "driving an unregistered vehicle owned by the driver (§§ 40001, 12810, subds. (e), (g)(1)), driving with a suspended license (§§ 14601, 12810, subd. (i)), driving on a highway at slightly more than 55 miles per hour when a higher speed limit has not been posted (§§ 22349, subd. (a), 12810, subd. (e)), failing to come to a complete stop at a stop sign (§§ 22450, 12810, subd. (e)), and making a right turn without signaling for 100 feet before turning (§§ 22108, 12810, subd. (e))." (*Howard, supra,* at pp. 1137–1138.)

■ As the above list illustrates, and as defendant argues, three or more violations that are assigned a traffic point count may not necessarily compel the conclusion that the defendant acted with a willful or wanton disregard for the safety of persons or property, as that term has traditionally been defined. Thus, if section 2800.2, subdivision (b) is a presumption, it could be strongly argued that it would be error to advise a jury that a defendant who commits three of the enumerated traffic violations has acted with a willful or wanton disregard. We need not determine this question because we find that subdivision (b) is not a mandatory rebuttable presumption but is instead a rule of substantive law.

■ Although Evidence Code section 601 classifies presumptions as "either conclusive or rebuttable," as explained in *People v. McCall, supra,* 32

Cal.4th at page 185, a conclusive presumption is not really a presumption at all.[2] It is a rule of substantive law. " '[A] conclusive or indisputable presumption is entirely different from the ordinary rebuttable presumption: [N]o evidence may be received to contradict it. Hence, it is more accurately described as a rule of substantive law rather than of evidence. [Citations.]' [Citation.]

"Wigmore took a dim view of the term 'conclusive presumption': 'In strictness there cannot be such a thing as a "conclusive presumption." Wherever from one fact another is said to be conclusively presumed, in the sense the opponent is absolutely precluded from showing by any evidence that the second fact does not exist, the rule is really providing that where the first fact is shown to exist, the second fact's existence is wholly immaterial for the purpose of the proponent's case; and to provide this is to make a rule of substantive law and not a rule apportioning the burden of persuading as to certain propositions or varying the duty of coming forward with evidence.' [Citation.] Our court has adopted the Wigmore view. [Citation.]" (*People v. McCall, supra,* 32 Cal.4th at p. 185, fn. omitted.)

 A rule of substantive law defines in precise terms conduct that establishes an element of an offense as a matter of law. (*People v. Williams, supra,* 130 Cal.App.4th at p. 1445.) There is no presumption and there is nothing to rebut.

The case of *People v. McCall, supra,* 32 Cal.4th 175, analyzed Health and Safety Code section 11383, subdivision (f) against a challenge that it was an impermissible mandatory presumption. At the time of the defendant's crime, Health and Safety Code section 11383, subdivision (f) provided that "[f]or purposes of this section" the possession of certain chemicals with the intent to manufacture methamphetamine "shall be deemed to be possession of hydriodic acid."[3] Subdivision (c)(2) of that section made the possession of hydriodic acid with the intent to manufacture methamphetamine a felony.

McCall argued that "while the possession of hydriodic acid with intent to manufacture methamphetamine is a crime under [Health and Safety Code] section 11383 [subdivision] (c)(2), the possession of the essential chemicals of

---

[2] As noted in *McCall* there is confusion regarding the term "conclusive presumption" because it has been incorrectly utilized to describe mandatory rebuttable presumptions. (*People v. McCall, supra,* 32 Cal.4th at p. 186.)

[3] Health and Safety Code section 11383, subdivision (f) was rewritten in 2003.

hydriodic acid (red phosphorus and iodine) with intent to manufacture methamphetamine is not a crime under section 11383(c)(2). Therefore, insofar as section 11383(f) deemed the possession of red phosphorus and iodine to be the possession of hydriodic acid, it mandatorily presumed an element of the crime (possession of hydriodic acid) from a noncriminal act (possession of red phosphorus and iodine), and impermissibly lessened the prosecutor's burden of proving all the elements of section 11383(c)(2). [McCall] suggests that the only way to avoid this constitutional infirmity is for the Legislature to enact the separate substantive crime of possession of red phosphorus and iodine with intent to manufacture methamphetamine." (*People v. McCall, supra*, 32 Cal.4th at pp. 187–188.)

The Supreme Court disagreed. The court found that Health and Safety Code section 11383, subdivision (f) "was not phrased in the manner of a mandatory rebuttable presumption: there was no ultimate fact to be presumed from one or more basic facts. Instead, the statute provided that the possession of red phosphorus and iodine with intent to manufacture methamphetamine *shall be deemed* to be possession of hydriodic acid with intent to manufacture methamphetamine. The phrase 'shall be deemed,' as utilized in section 11383(f), simply created a rule of substantive law; to wit, the possession of red phosphorus and iodine with intent to manufacture methamphetamine was the *legal equivalent* of possession of hydriodic acid with intent to manufacture methamphetamine. Like the term 'shall be conclusively presumed,' the term 'shall be deemed' simply created substantive law." (*People v. McCall, supra*, 32 Cal.4th at p. 188.)

■ The court found that Health and Safety Code section 11383, subdivision (f) did not contain a presumption at all but instead expanded the scope of the conduct made criminal by subdivision (c) beyond its lay meaning to a "term of art that *included* the possession of hydriodic acid's essential chemicals." (*People v. McCall, supra*, 32 Cal.4th at p. 189.) In making this finding the court noted that "[s]ubstantive due process allows lawmakers broad power to select the elements of crimes, and to define one thing in terms of another. [Citations.]" (*Ibid.*)

■ We find that the addition of subdivision (b) to section 2800.2 contains the same type of language as that discussed in *McCall*. Subdivision (b) does not contain a presumption. It sets forth a definition of conduct that is deemed to be the legal equivalent of willful or wanton disregard for purposes of

section 2800.2. Subdivision (b) does not follow the common lay meaning of the term but is a term of art for purposes of section 2800.2.

Legislative history supports this interpretation. The analysis by the Senate Rules Committee of Assembly Bill 1999 for the 1995–1996 term states that this bill "would *define* 'a willful or wanton disregard for the safety of persons or property' as behavior that includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count occur[]." (Sen. Rules Com., Office of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1999 (1995–1996 Reg. Sess.) as amended July 7, 1996, p. 2, italics added.)

In describing what Assembly Bill 1999 would provide, the Legislative Counsel's Digest states that the bill "would *describe* acts that *constitute* driving in a willful or wanton disregard for the safety of persons or property." (Legis. Counsel's Dig., Assem. Bill No. 1999 (1995–1996 Reg. Sess.) 8 Stats 1996, Summary Dig., p. 2231, italics added; see Stats. 1996, ch. 420, § 1, p. 2696.)

Language used by the Legislature makes it clear it was not creating a mandatory presumption but was instead creating a rule of substantive law. As previously stated, the Legislature has broad powers "to define one thing in terms of another." (*People v. McCall, supra*, 32 Cal.4th at p. 189.)

We agree with the views expressed in the majority opinion of *People v. Pinkston* (2003) 112 Cal.App.4th 387 [5 Cal.Rptr.3d 274] and the opinion of *People v. Williams, supra*, 130 Cal.App.4th 1440, reaching this same result.[4]

## II. Abstract of Judgment

Defendant contends and respondent concedes the abstract of judgment improperly reflects true findings on four prior prison terms when the trial court found only three prior prison terms to be true. We agree.

---

[4] The trial court here believed that the statute was overbroad. As a result it listed in the instructions only Vehicle Code violations that involve the improper operation of a motor vehicle, rather than status offenses, and also required the jury to make separate findings of whether the defendant drove with a willful or wanton disregard and/or violated three of the enumerated Vehicle Code sections listed specifically by the court. Defendant claims that these actions by the trial court did not cure the defect in the statute. Because we find there is no defect in the statute, we need not discuss this contention.

## DISPOSITION

We direct the correction of the abstract of judgment to show that defendant served three prior prison terms, not four. The trial court shall forward a corrected abstract of judgment to the appropriate authorities. In all other respects, the judgment is affirmed.

Levy, J., and Cornell, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 24, 2006, S142813.