Filed 1/30/18

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B280781 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA069074) |
| v. | |
| MONTRELL LAMONTE TAYLOR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Shannon Knight, Judge. Affirmed.

Robert Booher, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General and Michael C. Keller, Deputy Attorney General, for Plaintiff and Respondent.

In the underlying action, appellant Montrell Lamonte Taylor was convicted of evading a pursuing police officer while driving with a disregard for safety, as defined in Vehicle Code section 2800.2.[1]  Subdivision (a) of that statute provides that a motorist engages in a crime when he or she flees from, or attempts to elude, a police officer's vehicle, and drives "in a willful or wanton disregard for the safety of persons or property."  Subdivision (b) of section 2800.2 further states that "[f]or purposes of this section," such disregard "includes, but is not limited to," driving in a manner involving the commission of three or more traffic violations assigned a point under section 12810.

Appellant contends subdivision (b) of section 2800.2 establishes an improper mandatory presumption regarding the existence of the "willful or wanton disregard" required for the offense; he further contends the jury was improperly instructed with CALCRIM No. 2181 because it incorporates that purported presumption.  We conclude that section 2800.2 contains no such presumption, and that there was no prejudicial instructional error.  Accordingly, we affirm.

**RELEVANT PROCEDURAL AND FACTUAL BACKGROUND**

In August 2016, an information was filed, charging appellant with evading a police officer while driving

---

[1]     All further statutory citations are to the Vehicle Code, unless otherwise indicated.

2

recklessly (Veh. Code, §2800.2).  Accompanying the charges were allegations that appellant had suffered a strike under the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and four prior felony convictions for which he had served a prison term (Pen. Code, § 667.5, subd. (b)).  Appellant pleaded not guilty and denied the special allegations.

After a jury found appellant guilty as charged, the trial court found the prior conviction to be true, denied appellant's motion to strike his strike (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497), and imposed a sentence of 10 years in prison.  This appeal followed.

## FACTS

At trial, appellant stipulated that on June 24, 2016, while driving a vehicle, he willfully fled from, or tried to elude, a police officer with the intention of evading the officer.  The sole witness at trial was Los Angeles County Sheriff's Department Sergeant Michael Bryerton.

According to Sergeant Bryerton, on June 24, at approximately 1:00 a.m., he was on patrol in Lancaster in a marked police vehicle.  After receiving a call that a black male adult suspected of attempted rape was driving a white SUV with "disabled" license plates, he saw appellant drive past him.  Because appellant and his vehicle appeared to fit the description provided in the call, Bryerton followed appellant.  In an effort to pull appellant over, Bryerton activated his sirens and flashing lights.  Instead of stopping,

3

appellant accelerated and drove through residential neighborhoods, exceeding the posted speed limits and failing to halt at stop signs.  Appellant then accelerated to 75 miles per hour along a street with open businesses and a posted speed limit of 35 miles per hour.  The pursuit ended when appellant drove into a motel parking lot, stopped, and ran into a motel room, where he was detained.  Bryerton testified that in the course of the pursuit, appellant committed eight traffic violations assigned at least one point under the traffic violation point system.

## DISCUSSION

Appellant asserts interrelated contentions regarding section 2800.2 and the corresponding jury instruction, CALCRIM No. 2181.  He maintains that section 2800.2 establishes a mandatory presumption that contravenes principles of due process.  He further maintains that the trial court engaged in prejudicial error by instructing the jury with CALCRIM No. 2181 because it reflects the improper presumption.  For the reasons discussed below, we reject his contentions.

### A.  *Governing Principles*

The key issues concern whether section 2800.2 sets forth an improper mandatory presumption regarding an element of the offense established by that statute.  As our Supreme Court has explained, presumptions are not inherently impermissible in criminal proceedings; rather,

4

they are a "'staple of our adversary system of factfinding'" because "'[it] is often necessary for the trier of fact to determine the existence of an element of the crime -- that is, an "ultimate" or "elemental" fact -- from the existence of one or more "evidentiary" or "basic" facts.'" (*People v. McCall* (2004) 32 Cal.4th 175, 182 (*McCall*), quoting *Ulster County Court v. Allen* (1979) 442 U.S. 140, 156.)  Nonetheless, issues of due process may attend so-called "mandatory" presumptions. (*McCall, supra,* at p. 183.)  Generally, a mandatory presumption "'tells the trier of fact that he or they *must* find the elemental fact upon proof of the basic fact, at least until the defendant has come forward with some evidence to rebut the presumed connection between the two facts . . . .'" (*Ibid.,* quoting *Ulster County, supra*, at p. 157.)[2]  In the context of criminal proceedings, such a presumption contravenes due process -- and thus is improper -- when it relieves the prosecution of its burden of proving the elements of a crime beyond a reasonable doubt. (*McCall, supra,* at pp. 183-184.)

Here, our focus is the offense set forth in section 2800.2, which is defined in part by reference to the related

---

[2]     So understood, a mandatory presumption is necessarily rebuttable, rather than conclusive. (*McCall, supra*, 32 Cal.4th at pp. 185-186.)  Ordinarily, statutes containing the phrase "'shall be conclusively presumed'" are understood to establish rules of substantive law, rather than presumptions. (*Id.* at p. 186.)

5

offenses established in section 2800.1.  Section 2800.1 provides that when, with the intent to evade, the driver of a motor vehicle willfully flees or attempts to elude a pursuing peace officer's motor vehicle or bicycle under specified circumstances, the driver is guilty of a misdemeanor.[3] Subdivision (a) of section 2800.2 provides that when a person contravenes section 2800.1 and "the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property," the person is subject to prosecution for a misdemeanor or a felony.  Subdivision (b) of section 2800.2 further states:  "For purposes of this section, a willful or wanton disregard for the safety of persons or property

---

[3]    Pertinent here is subdivision (a) of section 2800.1, which states:  "Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor punishable by imprisonment in a county jail for not more than one year if all of the following conditions exist: [¶] (1) The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp. [¶] (2)  The peace officer's motor vehicle is sounding a siren as may be reasonably necessary. [¶] (3)  The peace officer's motor vehicle is distinctively marked. [¶] (4)  The peace officer's motor vehicle is operated by a peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 of the Penal Code, and that peace officer is wearing a distinctive uniform."

includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under [Vehicle Code s]ection 12810 occur, or damage to property occurs."

B. *No Improper Mandatory Presumption*

Appellant contends subdivision (b) of section 2800.2 creates an improper mandatory presumption involving three or more significant traffic violations as the evidentiary or basic fact, and the existence of "a willful or wanton disregard for the safety of persons or property" as the ultimate or elemental fact. The crux of his argument is that the subdivision "directed the jury to find that appellant had a particular intent -- a willful or wanton disregard for the safety of people and property -- based on his having sped or run a stop sign." Appellant acknowledges that three appellate decisions have rejected similar contentions (*People v. Pinkston* (2003) 112 Cal.App.4th 387, 390-394 (*Pinkston*); *People v. Williams* (2005) 130 Cal.App.4th 1440, 1445 (*Williams*); *People v. Laughlin* (2006) 137 Cal.App.4th 1020, 1025 (*Laughlin*)), but he maintains that they were wrongly decided for the reasons set forth in a dissenting opinion by Presiding Justice Klein in *Pinkston*, *supra*, at pages 395-398. As explained below, we agree with the majority opinion in *Pinkston* and the courts in *Williams* and *Laughlin*.

In maintaining that subdivision (b) of section 2800.2 established an improper mandatory presumption, Justice

7

Klein viewed the phrase "'willful or wanton disregard for the safety of persons or property'" as carrying the precise meaning attributed to the same phrase in section 23103, subdivision (a), which establishes the offense of reckless driving. (*Pinkston*, *supra*, 112 Cal.App.4th at p. 395, dis. opn. of Klein, J.) Originally enacted in 1923 (Stats. 1923, ch. 266, § 121, p. 557), the reckless driving statute was amended in 1929 to proscribe driving with a "wil[l]ful or a wanton disregard of the safety of persons or property" (Stats 1929, ch. 253, § 121, p. 540). Subdivision (a) of section 23103, in its current version, provides: "A person who drives a vehicle upon a highway in willful or wanton disregard for the safety of persons or property is guilty of reckless driving."

As the reckless driving statute has never defined driving with "willful or wanton disregard for the safety of persons or property," courts have determined that it targets driving manifesting a particular state of mind (*People v. Smith* (1939) 36 Cal.App.2d Supp. 748, 750-751), namely, "consciousness of the results with intent to omit or do an act, realizing the probable injury to another; or acting in reckless disregard of the consequences; or conduct exhibiting reckless indifference as to the probable consequences with knowledge of likely resulting injury" (*People v. Allison* (1951) 101 Cal.App.2d Supp. 932, 934). That characterization of the mental state defining reckless driving is traceable to *People v. McNutt* (1940) 40 Cal.App.2d Supp. 835, 837-838, and reflects the common or ordinary meaning of the terms "'willful'" and "'wanton'" (see *People v. Richie* (1994) 28

Cal.App.4th 1347, 1360-1362 (*Richie*)).

Justice Klein's dissenting opinion in *Pinkston* regarded the mental state defining the conduct proscribed by section 23103, subdivision (a), as also defining the conduct proscribed by section 2800.2. (*Pinkston*, *supra*, 112 Cal.App.4th at pp. 394-395.) Justice Klein thus maintained that subdivision (b) of section 2800.2 creates an improper mandatory presumption, reasoning that it authorized the prosecution to establish the "relatively complex mental state" required by section 2800.2 merely by demonstrating three qualifying traffic violations. (*Pinkston*, *supra*, at pp. 396-397, dis. opn. of Klein, J.)

We decline to accept Justice Klein's rationale, as we conclude that the mental state required for the reckless driving offense established in section 23103, subdivision (a), is not required for the section 2800.2 offense. As explained below, an examination of section 2800.2 and its legislative history shows that a driver may violate section 2800.2 without manifesting the mental state necessary for the offense of reckless driving.

Our inquiry reflects established principles. Generally, the Legislature is empowered to select the elements of crimes (*McCall*, *supra*, 32 Cal.4th at p. 189) and modify the mental elements included in the statutory definition of a crime (*People v. Saille* (1991) 54 Cal.3d 1103, 1116; *People v. Lynn* (1984) 159 Cal.App.3d 715, 732-733). Furthermore, the meaning of a statutory term is determined by the Legislature's intent, as reflected by the statute's language,

context, and legislative history.  (*People v. Verduzco* (2012) 210 Cal.App.4th 1406, 1414.)  In view of that principle, a phrase in a statute may have a technical meaning differing from its ordinary meaning.  (*Id.* at p. 1419.)  Accordingly, the same phrase may appear in two statutes establishing offenses, yet convey different meanings.  (See, e.g., *People v. Enriquez* (1996) 42 Cal.App.4th 661, 665 [the term "'under the influence'" in Vehicle Code section 23152, subdivision (a), differs in meaning from the same term in Health and Safety Code section 11550].)

As originally enacted in 1988, section 2800.2 contained only the provision now found in subdivision (a), which states that the offense is committed when a person violates section 2800.1 while driving in "a willful or wanton disregard for the safety of persons or property . . . ."  (Stats. 1988, ch. 504, § 3, p. 1919.)  Because the statute then lacked any provision defining the requisite driving with "willful or wanton disregard," courts construed the offense to involve or require two distinct mental states, namely, (1) the "'intent to evade'" required for the section 2800.1 offense (*People v. Dewey* (1996) 42 Cal.App.4th 216, 222), and (2) the mental state required for the reckless driving offense specified in section 23103 (*id.* at pp. 221-222; *Richie, supra,* 28 Cal.App.4th at pp.1360-1362).

The absence of a statutory definition of the requisite driving with "willful or wanton disregard" was rectified in 1996, when the Legislature amended section 2800.2 to add subdivision (b), which provides:  "*For purposes of this section,*

10

a willful or wanton disregard for the safety of persons or property *includes*, *but is not limited to*, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more [qualifying traffic] violations . . . occur . . . ." (Stats. 1996, ch. 420, § 1, p. 2696, italics added.) By its plain language, subdivision (b) of section 2800.2 discloses the Legislature's intent to impose a technical meaning on the phrase "driv[ing] in a willful or wanton disregard for the safety of persons or property," as found in subdivision (a) of section 2800.2. (*Ibid.*) That conclusion finds additional support in the 1996 amendment's legislative history, which shows that subdivision (b) of section 2800.2 was intended to "'*describe* acts that *constitute* driving in a willful or wanton disregard for the safety of persons or property.'" (*Laughlin, supra,* 137 Cal.App.4th at p. 1028 quoting Legis. Counsel's Dig., Assem. Bill No. 1999 (1995-1996 Reg. Sess.) 8 Stats 1996, Summary Dig. p. 2231.)

In our view, subdivision (b) of section 2800.2 expanded the types of driving proscribed under the statute in a manner that modified --- but did not entirely eliminate -- the mental state requirements for the section 2800.2 offense. Because subdivision (b) did not alter the requirement for a violation of section 2800.1, the section 2800.2 offense still requires the "intent to evade" set forth in section 2800.1. However, subdivision (b) of section 2800.2 permits the prosecution to show the requisite driving with "willful or wanton disregard" by establishing three or more traffic violations, as an alternative to showing that the defendant

11

drove in a manner manifesting the mental state required for the reckless driving offense.  For that reason, the mental state relating to the reckless driving offense is no longer an essential element or component of the section 2800.2 offense.

Subdivision (b) of section 2800.2 thus creates no improper mandatory presumption permitting the prosecution to establish an "elemental" fact -- that is, the mental state required for the section 2800.2 offense -- merely by showing a simple evidentiary fact -- that is, the existence of three or more qualifying traffic violations.  Rather, subdivision (b) reflects an exercise of the Legislature's authority to modify the statutory elements of the section 2800.2 offense.  We therefore agree with the majority opinion in *Pinkston* and the courts in *Williams* and *Laughlin*, which concluded that subdivision (b) of section 2800.2 constitutes only a substantive rule of law properly within the Legislature's power to enact.  (*Pinkston, supra*, 112 Cal.App.4th at 392; *Williams, supra*, 130 Cal.App.4th at p. 1440; *McLaughlin, supra*, 137 Cal.App.4th at pp. 1027-1028.)

*Carella v. California* (1989) 491 U.S. 263 (*Carella*) and *People v. Forrester* (1994) 30 Cal.App.4th 1697 (*Forrester*), upon which appellant relies, are distinguishable.  In *Carella,* the defendant was charged with grand theft for failure to return a rented car.  (*Carella, supra,* at pp. 264-265.)  Applying statutory presumptions, the trial court instructed the jury that in the case of rented vehicles, a person "'shall be presumed to have embezzled the vehicle,'" and that

"intent to commit theft by fraud is presumed," if the person failed to return the vehicle within specified time periods. (*Id*. at p. 264.) The United States Supreme Court concluded that the instructions improperly "foreclosed independent jury consideration of whether the facts proved established certain elements of the [charged] offenses" and "relieved the State of its burden of proof . . . ." (*Id*. at p. 266.)

*Forrester* presented a similar set of circumstances. There, the defendant was charged with the offense of failing to appear for trial after being released on his own recognizance. (*Forrester*, *supra*, 30 Cal.App.4th at pp. 1699-1700.) On the basis of a statutory presumption, the trial court instructed the jury that "'it should . . . be presumed'" that the defendant's failure to appear for trial within a specified period established his intent to evade trial. (*Id*. at pp. 1700-1701.) Relying on *Carella*, the appellate court concluded that the instruction improperly relieved the prosecution of its burden of proving the intent element of the charged offense. (*Id*. at p. 1702.)

Unlike *Carella* and *Forrester*, subdivision (b) of section 2800.2 establishes no presumption relating an evidentiary fact to the elements of the section 2800.2 offense. On the contrary, as explained above, subdivision (b) must be regarded as *defining* those elements, that is, as setting forth a substantive rule of law regarding the nature of the offense. Furthermore, for the reasons discussed further below (see pt. C. of the Discussion, *post*), we conclude that CALCRIM No. 2181 did not direct the jury to apply any improper

13

presumption.  We therefore reject appellant's contention that section 2800.2 contains an improper mandatory presumption.[4]

---

[4]    The other decisions to which appellant directs our attention are distinguishable for similar reasons.  In each case, the reviewing court concluded that a jury instruction, statute, or trial court ruling reflected an improper presumption that the defendant's intent (or other mental state) was established by an evidentiary fact.  (*Francis v. Franklin* (1985) 471 U.S. 307, 317-318 [in action in which the defendant was charged with murder, it was error to instruct the jury regarding rebuttable presumptions that the acts of a person of sound mind and discretion are the product of their will, and that such a person intends the natural and probable consequences of his acts]; *Sandstrom v. Montana* (1979) 442 U.S. 510, 512, 524 [in action in which the defendant was charged with murder, it was error to instruct the jury to presume that a person intends the ordinary consequences of his voluntary acts]; *United States v. United States Gypsum Co.* (1978) 438 U.S. 422, 446, 443-448 [in criminal antitrust action, it was error to instruct the jury to presume that the defendants intended to engage in price-fixing if their conduct had the effect of raising and stabilizing prices]; *Morissette v. United States* (1952) 342 U.S. 246, 249, 274 [in action in which the defendant was charged with criminal conversion of government property, it was error for the trial court to remove from the jury the issue of the defendant's intent to steal, and to rule that intent was established by the defendant's act of taking what he regarded as abandoned property]; *People v. Roder* (1983) 33 Cal.3d 491, 494, 503 [in action in which the defendant
(*Fn. is continued on the next page.*)

14

C. *No Reversible Instructional Error*

Appellant contends that CALCRIM No. 2181 is erroneous, arguing that it directed the jury to find the intent necessary for the section 2800.2 offense on the basis of three or more qualifying traffic violations. As explained below, the instruction contains no defect prejudicial to appellant.

Generally, the adequacy of any instruction given must be judged in the context of all the instructions. (5 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Criminal Trial, § 747, pp. 1164-1166.) Thus, an instruction is not assessed in isolation, but must be viewed in the context of the overall charge. (*People v. Reliford* (2003) 29 Cal.4th 1007, 1013.) When an instruction is potentially ambiguous or misleading, the instruction is not error unless there is a reasonable likelihood that the jurors misunderstood or misapplied the pertinent instruction. (*Ibid.*; *People v. Avena* (1996) 13 Cal.4th 394, 416-417.)

As provided to the jury, CALCRIM No. 2181 described the elements of the offenses defined in sections 2800.1 and

---

was charged with receiving stolen goods, it was error to instruct the jury to presume the defendant's "guilty knowledge" from his status as a secondhand dealer, possession of the stolen goods, and reasonable opportunity to confirm whether the goods were stolen, unless the jury otherwise had a reasonable doubt regarding that knowledge].) As explained above, subdivision (b) of section 2800.2 contains no presumption regarding the mental state required for the section 2800.2 offense.

15

2800.2, including the requirements that the defendant "intend[ed] to evade" a pursuing officer and "drove with willful or wanton disregard for the safety of persons or property."[5] Following that description, the instruction

---

[5] CALCRIM No. 2181 stated: "The defendant is charged in Count 1 with evading a peace officer with wanton disregard for safety in violation of . . . sections 2800.1[, subdivision] (a) and 2800.2. [¶] To prove that the defendant is guilty of this crime, the People must prove that:

1.     A peace officer driving a motor vehicle was pursuing the defendant;

2.     The defendant, who was also driving a motor vehicle, willfully fled from, or tried to elude, the officer, intending to evade the officer;

3.     During the pursuit, the defendant drove with willful or wanton disregard for the safety of persons or property;

AND

4.     All of the following were true:

(a)     There was at least one lighted red lamp visible from the front of the peace officer's vehicle;

(b)     The defendant either saw or reasonably should have seen the lamp;

(c)     The peace officer's vehicle was sounding a siren as reasonably necessary;

(d)     The peace officer's vehicle was distinctively marked;

AND

(e)     The peace officer was wearing a distinctive uniform."

16

explained: "*A person acts with wanton disregard for safety when (1) he or she is aware that his or her actions present a substantial and unjustifiable risk of harm, (2) and he or she intentionally ignores that risk.* The person does not, however, have to intend to cause damage. [¶] Driving with willful or wanton disregard for the safety of persons or property includes, but is not limited to, causing damage to property while driving or committing three or more violations that are each assigned a traffic violation point." (Italics added.)

In our view, these statements are potentially misleading regarding the requirements of the section 2800.2 offense. Although the final explanatory statement accurately summarizes subdivision (b) of section 2800.2, it is juxtaposed with the italicized statement, which reflects the mental state required for the reckless driving offense defined in section 23103, subdivision (a). As explained above (see pt.C. of the Discussion, *ante*), driving that manifests that mental state is not the only type of driving proscribed by subdivision (b) of section 2800.2, which expressly encompasses other deficient driving, including the commission of three qualifying traffic violations. Because CALCRIM No. 2181 fails to clarify that driving that manifests the "reckless driving" mental state is not necessary for the section 2800.2 offense, it incorrectly suggests that the "reckless driving" mental state is an essential element or component of the section 2800.2 offense.

17

That defect, however, could not have prejudiced appellant. As noted, appellant stipulated to having willfully fled from the pursuing officer. In closing argument, the prosecutor informed the jury -- correctly -- that in order to demonstrate that appellant drove with willful or wanton disregard for the safety of persons or property, the prosecution needed only to demonstrate the existence of three or more qualifying traffic violations. As there was undisputed evidence of eight qualifying violations, the prosecution made that showing. To the extent the instruction may have conveyed an excessively demanding understanding of the elements of the section 2800.2 offense, that feature of the instruction cannot reasonably be regarded as prejudicial to appellant, as it only enhanced the quantum of proof required of the prosecution to establish his guilt. In sum, appellant has shown no reversible instructional error.

## DISPOSITION

The judgment is affirmed.

**CERTIFIED FOR PUBLICATION**

MANELLA, J.

We concur:

WILLHITE, Acting P. J.

COLLINS, J.