Filed 11/12/25  P. v. Lusby CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RAMON RAY LUSBY,<br><br>    Defendant and Appellant. | A170250<br><br>(Napa County<br>Super. Ct. No. 23CR002574) |

A jury convicted Ramon Ray Lusby of evading an officer with willful disregard for the safety of persons and property and reckless driving.  After denying his motion to strike his prior strike conviction pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*), the trial court sentenced him to four years in prison.  On appeal, he argues the court prejudicially erred by admitting evidence of prior misconduct and by denying his motion to strike.  We affirm.

**BACKGROUND**

On August 15, 2023, an officer in a marked police vehicle in Napa County noticed a black Infinity sport utility vehicle (SUV) traveling in the middle of the day without a front license plate.  The driver, a heavyset, light-skinned Black male with "poofy hair," was later identified as Lusby.  A tinted license plate cover obscured the rear license plate — a violation of the Vehicle Code.  The officer attempted to conduct a traffic stop, but Lusby sped through

1

a red light at the intersection. The officer activated emergency lights and sirens in pursuit. Lusby sped away. Though the officer was driving approximately 90 to 110 miles per hour — the speed limit on the road was 45 miles per hour — the distance between Lusby and the officer grew, indicating he was driving much faster than the officer. He weaved in and out of traffic, making unsafe lane changes. After two minutes, the officer stopped the pursuit due to its speed and bystander traffic. The officer's dash camera recorded the pursuit and, using a database, the officer located the SUV's license plate. A records check revealed the SUV was "wanted for some type of felony."

Two days later, another officer saw the same SUV entering a freeway. It drove through Vallejo and into Berkeley. The officer alerted dispatch and followed it, which was being driven by a Black male wearing a white T-shirt. The driver — later identified as Lusby — stopped at a liquor store in Oakland, at which point officers approached him and ordered him to get on the ground. Even though officers had their weapons drawn, Lusby immediately turned and fled. Officers eventually apprehended him and seized the vehicle. They sent a photograph to the sheriff's office in Napa because they were aware of its investigation of an incident related to the same vehicle. They received confirmation that Lusby was the same person involved in the August 15 incident.

Lusby was charged with evading a peace officer with willful disregard for the safety of persons and property and reckless driving. (Veh. Code, §§ 2800.2, subd. (a), 23103, subd. (a).) The information alleged he had a 2023 prior strike conviction for robbery (Pen. Code, §§ 667, subd. (b)–(i), 211; undesignated statutory references are to this code); it also alleged several aggravating factors — that Lusby acted with great violence, cruelty,

2

viciousness, or callousness; violent conduct; increasing seriousness of priors; committed when on probation or parole; and that his prior performance on probation or parole was unsatisfactory (Cal. Rules of Court, rule 4.421(a)(1), (b)(1)–(2), (4)–(5)).

Before trial, the prosecution moved to admit evidence that Lusby was arrested in March 2020 for fleeing California Highway Patrol (CHP) officers. In that instance, he was driving up to 100 miles per hour on the highway without headlights at 2:00 a.m. Although the officers immediately activated their emergency lights and pursued the vehicle, they were unable to overtake it. During the pursuit, he passed several other CHP vehicles, made unsafe lane changes and, on three occasions, swerved at other vehicles to intentionally cause traffic collisions. Officers forced him to stop after using a spike strip to deflate his tires. Lusby exited the vehicle and attempted to flee, but officers eventually apprehended him.

The trial court ruled this evidence was admissible to demonstrate Lusby's intent for the charged offense — that he intended to evade officers. It further determined that the probative value outweighed the prejudicial effect, and it concluded an instruction that the evidence could not be used to demonstrate propensity would mitigate any prejudicial effect. Indeed, at the close of evidence, the court instructed the jury with CALCRIM No. 375, explaining that Lusby's prior uncharged misconduct could be considered for the limited purpose of deciding whether he acted with the intent to evade the officer in this case, he was aware his actions presented a substantial justifiable risk of harm, he intentionally ignored that risk, or his actions were not the result of mistake or accident.

The jury found Lusby guilty of both counts. In a bifurcated proceeding, the trial court found true his prior strike conviction and the aggravating

3

circumstances. The court denied his motion to dismiss the prior strike pursuant to *Romero* and sentenced him to four years in prison.

## DISCUSSION

First, Lusby argues the trial court violated Evidence Code sections 1101 and 352 by admitting evidence of his prior misconduct of evading a police officer in 2020. After reviewing this ruling for an abuse of discretion, we disagree. (*People v. Cordova* (2015) 62 Cal.4th 104, 132 [abuse of discretion standard of review for admission of evidence].)

Propensity evidence — that is, evidence of a defendant's bad acts used to prove the defendant's conduct on a specific occasion — is generally inadmissible. (Evid. Code, § 1101.) But evidence of prior conduct is admissible to prove some material fact other than a defendant's disposition to commit an act. (*Id.* subd. (b); *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 406.) This includes intent, knowledge, or absence of mistake. (Evid. Code, § 1101, subd. (b); *Bryant, Smith and Wheeler*, at p. 406, fn. 27.) To be admissible under Evidence Code section 1101, the evidence must also satisfy the strictures of Evidence Code section 352 — its probative value must not be substantially outweighed by undue prejudice. (*Bryant, Smith and Wheeler*, at pp. 406–407.)

Evidence of Lusby's prior evasion was relevant to establishing his intent with regard to the instant offense. Vehicle Code section 2800.2 — prohibiting driving in a willful or wanton disregard for the safety of persons or property — requires the prosecution to prove the defendant had the specific intent to evade police officers. (Veh. Code, §§ 2800.2, subd. (a), 2800.1, subd. (a); *People v. Taylor* (2018) 19 Cal.App.5th 1195, 1203.) To prove intent using uncharged misconduct, the prior conduct "must be sufficiently similar to support the inference that the defendant ' "probably

4

harbor[ed] the same intent in each instance." ' " (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.)

Sufficient similarity exists here. In both instances, Lusby engaged in traffic violations before police pursued him — in 2020, he was exceeding the speed limit on the highway without headlights, while in 2023, he was alleged to be driving without a front license plate and with a tinted rear plate. He also fled even though the officers activated their emergency lights and sirens. In both instances, he exceeded the posted speed limit when fleeing despite the existence of other cars on the road. Given the circumstances of the first event, the prior misconduct established Lusby must have intended to elude the officers in the charged offense. (*People v. Chhoun* (2021) 11 Cal.5th 1, 27.)

Lusby highlights several differences between his 2020 conduct and his charged offense — there was no evidence that in 2023 he attempted to evade officers by ramming into their cars, and there were differences in the time of day, vehicles, and location for each incident. Even accepting these differences, the "least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent." (*People v. Ewoldt*, *supra*, 7 Cal.4th at p. 402.) A recurrence of a similar action tends to negate claims the defendant acted accidentally, inadvertently, or with other innocent mental states when committing the charged offense. (*Id.* at pp. 402–403.) The sufficient similarity exists here to demonstrate intent, so his prior conduct was admissible under Evidence Code section 1101. At no time "did the court instruct the jury that any evidence could be considered as character evidence. Section 1101(a) was not violated." (*People v. Bryant, Smith and Wheeler*, *supra*, 60 Cal.4th at p. 406, italics omitted.) And although Lusby insists that his counsel's willingness to stipulate to his prior conduct

rendered admission unnecessary, a defendant "may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." (*Old Chief v. United States* (1997) 519 U.S. 172, 186–187.)

The probative value of this evidence was not substantially outweighed by any unduly prejudicial effect. (*People v. Culbert* (2013) 218 Cal.App.4th 184, 192.) For instance, the prior conduct was no stronger or more inflammatory than Lusby's charged offense. (*People v. Ewoldt, supra,* 7 Cal.4th at p. 405.) In both instances, he presented a safety risk by greatly exceeding the speed limit despite the existence of other cars and officers attempting to stop him. It is unlikely "that the jury's passions were inflamed by the evidence of defendant's uncharged offenses." (*Ibid.*) That an officer testified that the 2020 incident involved Lusby apparently veering towards cars during the pursuit to intentionally cause an accident does not render this evidence inflammatory in the extreme, as Lusby contends. His charged offense presented similar safety issues — speeding at 100 miles per hour away from officers on a city street with a posted limit of 45 miles per hour in the middle of the day, weaving through numerous cars. Indeed, officers halted their pursuit of Lusby due to the resulting safety issues.

Moreover, the testimony regarding the 2020 incident "cannot, standing alone, be viewed as protracted." (*People v. Harris* (1998) 60 Cal.App.4th 727, 739.) It occupies 10 pages of transcript, and even when combined with the instructions, admonitions, and closing arguments, the "trial court could find this factor weighed in favor of admission." (*Ibid.*) Finally, providing the jury with CALCRIM No. 375 — which explained that the uncharged misconduct evidence could *only* be considered for the limited purpose of deciding whether Lusby acted with intent to evade the officer, knew that the person he evaded was an officer, was aware his actions presented a risk of harm, that he

6

ignored that risk, or that his actions were not the result of mistake or accident — reduced the potential prejudice from the evidence. (*People v. Ortiz* (2003) 109 Cal.App.4th 104, 118.) We presume the jury followed this instruction. (*People v. Ervine* (2009) 47 Cal.4th 745, 776.)

Nothing in *People v. Hendrix* (2013) 214 Cal.App.4th 216 alters our conclusion. In that case, the defendant's two prior bad acts of violently resisting arrest by officers were admitted to demonstrate the defendant had the requisite knowledge to be guilty of knowingly resisting an officer — that he knew of police-related activities, such as arresting noncompliant individuals. (*Id*. at pp. 220, 242–243.) The appellate court reversed after determining these acts had little probative value because they were "dissimilar in a material way," lacked any relevancy to the charged offense, and only established common knowledge that police engage in activities such as arresting noncompliant individuals. (*Id*. at pp. 239, 244–245.) Thus, the court noted that "*in the context of this case*, the [CALCRIM No. 375] instruction" — that the jury should consider the similarity or lack of similarity between the uncharged offenses and the charged offense when considering whether the defendant had knowledge of his actions, or whether his actions were the result of a mistake or accident — "was confusing." (*Id*. at pp. 247–248, italics added.) Here, by contrast, the similarities between Lusby's prior act and his charged offense have significant probative value in establishing his intent.

In sum, there was nothing arbitrary, capricious, or patently absurd about the trial court's admission of the evidence. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124–1125.) Thus, its ruling did not violate Lusby's due process rights. (*People v. Brown* (2003) 31 Cal.4th 518, 545 ["routine

7

application of state evidentiary law does not implicate defendant's constitutional rights"].)

We also reject Lusby's argument that his counsel was ineffective for any omissions related to the admission of the prior misconduct or for failing to request a modification to CALCRIM No. 375. Prevailing on that claim requires demonstrating that counsel's representation fell below an objective standard of reasonableness and that there's a reasonable probability the outcome would have been different absent the error. (*Strickland v. Washington* (1984) 466 U.S. 668, 686–688, 694.) According to Lusby, admitting this evidence diverted the jury's attention from the insufficient evidence regarding the identity of the SUV driver during the August 15 incident — he argued the officer could not possibly identify Lusby through heavily tinted windows from a distance while driving at high speeds. Thus, Lusby posits, the jury convicted him simply based on the prior misconduct evidence.

Lusby fails to persuade us that there is any reasonable probability of a more favorable outcome absent any alleged omissions. The officer testified the SUV initially turned toward the police car, and the officer could see through the windshield. The driver turned his head toward the officer and made eye contact, and the officer specifically noted the driver's "poofy hair." When sent a photograph of Lusby after he was apprehended, the officer testified he was 100 percent sure Lusby was the same driver during the August 15 incident. Indeed, Lusby was driving the same SUV that was involved in the August 15 chase. Moreover, Lusby's conclusory assertions that the CALCRIM No. 375 instruction was prejudicial and the prior misconduct was so inflammatory as to prevent a fair trial in violation of due process rights does not satisfy his burden of demonstrating prejudice. (*People*

8

*v. Williams* (1988) 44 Cal.3d 883, 937 [defendant "must carry his burden of proving prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel"].) Because Lusby fails to demonstrate prejudice flowing from counsel's alleged failure, his ineffective assistance claim fails. (*In re Fields* (1990) 51 Cal.3d 1063, 1079 [determining whether counsel's performance was deficient is unnecessary where defendant fails to demonstrate sufficient prejudice].)

Next, Lusby contends the trial court erroneously denied his *Romero* motion because it failed to consider and give great weight to mitigating circumstances recently added to section 1385, subdivision (c). We discern no abuse of discretion in the court's ruling. (*People v. Carmony* (2004) 33 Cal.4th 367, 373–374 [abuse of discretion standard of review for ruling on *Romero* motion].)

After a sentencing hearing, the trial court denied Lusby's motion to strike his prior robbery conviction for the reasons articulated by the prosecutor — that dismissing the strike allegation would not be in furtherance of justice. Lusby, the court explained, was not outside the scope of the "Three Strikes" law based on his numerous criminal convictions and the seriousness of the charged offense and his prior convictions. It acknowledged Lusby's relatively young age — nearly 24 years old at the time of his arrest — but it did not consider that a sufficient reason to strike the prior conviction. In addition, the court noted there were several aggravating circumstances it previously found true that supported the aggravated term for his evasion of an officer conviction. It nonetheless imposed the middle term, doubled pursuant to the strike offense for his evasion conviction, and a 90-day term for his reckless driving conviction that was stayed — a total of four years.

9

Under the Three Strikes law, the trial court must impose specific sentencing requirements for defendants with prior strike convictions — serious or violent felonies. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377; *People v. Sasser* (2015) 61 Cal.4th 1, 11; § 667, subd. (b).) For a defendant with one prior strike conviction, the prison term is doubled. (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1).)[1] But the court has the discretion to dismiss a prior strike conviction if it would be in the furtherance of justice. (§ 1385, subd. (a); *Romero*, *supra*, 13 Cal.4th at pp. 529–530.) When doing so, it must consider "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme's spirit." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) The court must "explicitly articulate its reasoning" if it departs "from a harsher sentence by granting the *Romero* motion." (*People v. Salazar* (2023) 15 Cal.5th 416, 428.)

A trial court abuses "its discretion in failing to strike a prior felony conviction allegation in limited circumstances," such as unawareness of its discretion to dismiss, or considering impermissible factors when declining to dismiss. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 378.) We discern no such issues here. The record reflects the court's awareness of its discretion to strike the prior conviction. It expressly stated it considered the prosecution's sentencing brief, which discussed section 1385, subdivision (a), and it acknowledged its discretion to strike the prior section 211 conviction. And nothing indicates the court considered impermissible factors. Rather, the

---

[1] Prior juvenile adjudications constitute prior serious or violent felony convictions under the Three Strikes law if certain criteria are satisfied. (§ 667, subds. (d)(3)(A)–(D).)

court concluded, based on Lusby's conduct in the charged offense and his record of prior convictions, that he was within the spirit of the Three Strikes scheme. (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.)

Lusby argues that the trial court erroneously denied his motion to strike without considering and affording great weight to the mitigating circumstances in section 1385, subdivision (c). That provision was amended to identify factors courts "must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Sek* (2022) 74 Cal.App.5th 657, 674.) Proof of one or more of the specified factors "weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).) Though Lusby acknowledges case law concluding these amendments apply only to sentencing enhancements, not prior strike convictions under the Three Strikes law, he insists those cases are wrongly decided. (*People v. Jefferson* (1999) 21 Cal.4th 86, 101 ["enhancement" has a technical meaning — " 'an *additional term* of imprisonment added to the base term' "]; *People v. Burke* (2023) 89 Cal.App.5th 237, 243 ["Three Strikes law is not an enhancement; it is an alternative sentencing scheme for the current offense"]; *People v. Olay* (2023) 98 Cal.App.5th 60, 67 ["If the Legislature had wanted section 1385, subdivision (c) to apply to prior strikes as well as to enhancements as legally defined, it would have said so"].)

Lusby's failure to raise this argument at the sentencing hearing forfeits it, and we decline to consider it.[2] (*People v. Saunders* (1993) 5 Cal.4th 580, 589–590.) For the same reason, we also do not consider his argument that

---

[2] We also question, but do not decide whether the record supports this argument. Lusby concedes "the court reportedly considered mitigating evidence of [his] youthfulness at the time of the incident."

the trial court erroneously considered a prior juvenile strike conviction that was decided by a judge, not a jury, due to the civil nature of a juvenile proceeding — again, he makes this argument for the first time on appeal. (*People v. Jenkins* (2000) 22 Cal.4th 900, 947.)  In sum, no sentencing error appears.

## DISPOSITION

The judgment is affirmed.

_____

RODRÍGUEZ, J.

WE CONCUR:


_____

TUCHER, P. J.


_____

PETROU, J.

A170250; *The People v. Lusby*