Filed 7/2/25  P. v. Quesada CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>KYLE STEVEN-LOUIS QUESADA,<br><br>        Defendant and Appellant. | A168520<br><br>(Contra Costa County<br>Super. Ct. No. 04-002030377) |

Kyle Steven-Louis Quesada was convicted of evading a peace officer while driving with willful and wanton disregard for safety.  He argues the trial court erred in failing to sufficiently instruct the jury on the underlying traffic violations upon which the conviction was based.  He additionally contends he received ineffective assistance of counsel due to his attorney's failure to object to improper opinion testimony.  We affirm.

## BACKGROUND

### I.

### *Factual Background*

**A. Prosecution's Case**

At around 6:12 p.m. on June 23, 2021, Contra Costa Sheriff's Deputy Cody Castelluccio was on patrol in Bethel Island, wearing a full-duty uniform and driving a marked patrol car with a light bar and siren.  A white Chrysler sedan in the parking lot of a gas station caught his attention because it had a

1

registration sticker from 2015. Castelluccio parked and approached the vehicle on foot. Quesada, with whom Castelluccio had previously had contact, was in the driver's seat; a Black male was in the front passenger seat and a white female was in the back. After the occupants identified themselves, the officer told them he was going to conduct a records check and would be right back.

Castelluccio returned to his patrol car but before he was able to conduct the check, the car pulled out and drove quickly out of the parking lot. Castelluccio got into his vehicle and followed the Chrysler on Gateway Road. The speed limit on that road is 45 miles per hour. Based on his own speed as he caught up and paced the Chrysler, Castelluccio testified that Quesada was driving about 60 miles per hour. The area is typically busy around 6:00 p.m. and there were "a few" other cars on the road. Castelluccio activated his overhead lights and siren to effectuate a traffic stop but the Chrysler continued to drive away, now at about 65 miles per hour. Castelluccio testified that speeding is a violation of Vehicle Code[1] section 22350.

As Quesada approached the intersection of Gateway Road and Bethel Island Road, he drove into the opposite lanes of traffic, which Castelluccio testified is a violation of section 21460, subdivision (a). Quesada failed to stop at the stop sign at the intersection. Castelluccio testified that failing to yield to a stop sign is a violation of section 22450, subdivision (a) and that because there was a double yellow line at the intersection, he also violated section 21752, subdivision (a).

---

[1] All further statutory references will be to the Vehicle Code unless otherwise indicated.

Quesada turned left on Bethel Island Road, driving toward Cottage Lane at 35 miles an hour in a section where the speed limit is 25 miles per hour. Castelluccio testified that driving at 35 miles per hour in a 25 miles per hour zone is a violation of section 22350. Again, there were "a few" other cars on the road.

Quesada stopped his car without pulling to the side of the road. Castelluccio stopped behind him but before he could put his vehicle in park, the Chrysler "sped away." Castelluccio saw a "plastic substance" thrown out of the driver's side window. Quesada continued on Bethel Island Road. After crossing Bethel Island Bridge, the speed limit changed to 50 miles per hour. Quesada was driving at 65 miles per hour, another violation of section 22350.

Quesada turned right onto East Cypress Road, failing to stop at a red traffic light at the intersection. Failing to yield at a red traffic light is a violation of section 21453. At this point, Quesada slowed to about five miles per hour, got out of the driver's seat and ran north on East Cypress Road. Castelluccio put his vehicle in park, quickly determined that he was not in danger from anyone in the Chrysler and ran after Quesada. The Chrysler was still moving and no one was in the driver's seat. Castelluccio did not find Quesada.

Castelluccio testified that the pursuit lasted a little less than 4 minutes and covered about 2.1 miles. To his knowledge, no accidents were caused and no one was injured.

**B. Defense**

Michael England, a peace officer with the City of Oakley, testified that at about 6:19 p.m. on June 23, 2021, he responded to the location where a subject had "foot bailed" from a car. When he arrived, he found a white female in the driver seat and no one else in or around the car.

## II.

### *Procedural Background*

Quesada was charged by information filed on January 27, 2023, with two felonies: Fleeing a pursuing peace officer while driving recklessly (§ 2800.2) (count 1) and fleeing a pursuing peace officer and driving against traffic (§ 2800.4) (count 2). A jury trial resulted in verdicts of guilty on count 1 and not guilty on count 2. Quesada filed a motion for a new trial, which the trial court denied.

On August 10, 2023, the trial court placed Quesada on formal probation for a period of two years. Quesada filed a timely notice of appeal.

## DISCUSSION

## I.

### *Instructions*

### A. Governing Law

"The trial court has a sua sponte duty to instruct the jury on the essential elements of the charged offense." (*People v. Merritt* (2017) 2 Cal.5th 819, 824.) It must also instruct on " 'general principles of law that are . . . necessary to the jury's understanding of the case.' " (*People v. Roberge* (2003) 29 Cal.4th 979, 988.) "A court's duty to define statutory terms 'arises where the terms have a technical meaning that is peculiar to the law.' [Citation.] In contrast, '[w]hen a word or phrase " 'is commonly understood by those familiar with the English language and is not used in a technical sense peculiar to the law, the court is not required to give an instruction as to its meaning in the absence of a request.' " ' " (*People v. Krebs* (2019) 8 Cal.5th 265, 331-332.) "A word or phrase having a technical, legal meaning requiring clarification by the court is one that has a definition that *differs* from its nonlegal meaning." (*People v. Estrada* (1995) 11 Cal.4th 568, 574.)

4

"The legal adequacy of an instruction is reviewed independently." (*People v. Cole* (2004) 33 Cal.4th 1158, 1210.) "When considering a claim of instructional error, we view the challenged instruction in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied the instruction in an impermissible manner." (*People v. Houston* (2012) 54 Cal.4th 1186, 1229.) Error in instructions on an element of a charged offense is subject to review under the beyond a reasonable doubt standard. (*People v. Aledamat* (2019) 8 Cal.5th 1, 9.)

## B. Additional Background

Section 2800.2, subdivision (a) defines the offense of which Quesada was convicted: "If a person flees or attempts to elude a pursuing peace officer in violation of Section 2800.1 and the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property, the person driving the vehicle, upon conviction, shall be punished by imprisonment in the state prison, or by confinement in the county jail for not less than six months nor more than one year."[2] Section 2800.2, subdivision (b) provides, "For purposes

---

[2] This appeal concerns only the "willful and wanton disregard" element of a section 2800.2 offense. The other elements, not at issue here, are specified in section 2800.1, subdivision (a), which provides:

"Any person who, while operating a motor vehicle and with the intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer's motor vehicle, is guilty of a misdemeanor . . . if all of the following conditions exist:

"(1) The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp.

"(2) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary.

"(3) The peace officer's motor vehicle is distinctively marked.

of this section, a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under [s]ection 12810 occur, or damage to property occurs." (§ 2800.2, subd. (b).)[3]

As relevant to Quesada's claim on appeal, the jury was instructed pursuant to CALCRIM No. 2181 that in order to prove him guilty of count 1, the prosecution was required to prove that during the pursuit Quesada drove "with willful or wanton disregard for the safety of persons or property" or "committed three or more violations each of which would make the defendant eligible for a traffic violation point." The jury was further instructed: "A person acts with wanton disregard for safety when: 1, he is aware that his actions present a substantial and unjustifiable risk of harm; 2, and he intentionally ignores that risk. · The person does not, however, have to intend to cause damage. · Vehicle Code [s]ection 22350 basic speed law; ·Vehicle Code [s]ection 22450[, subdivision] (a), special stops required; Vehicle Code [s]ection 21460[, subdivision] (a), crossing yellow or white solid parallel lines; and Vehicle Code [s]ection 21453[, subdivision] (a), traffic signs, signals and markings are each assigned a traffic violation point."

---

"(4) The peace officer's motor vehicle is operated by a peace officer . . . and that peace officer is wearing a distinctive uniform."

[3] Section 12810 lists the number of traffic violation points assigned to enumerated traffic violations (§ 12810, subds. (a)-(e), (g), (h)) and further provides that, with specified exceptions, "any other traffic conviction involving the safe operation of a motor vehicle upon the highway shall be given a value of one point" (*id.,* subd. (f)). The violations in the present case are not among the specifically enumerated ones or the exceptions.

After the conclusion of trial, Quesada moved for a new trial based in part on the ground that the jury instructions did not define necessary elements of the offense charged in count 1 in that no definition was given for the enumerated traffic violations that could support finding him guilty of this offense. In denying the new trial motion, the trial court stated, as to "the jury instruction and not putting forth elements of the ·[V]ehicle [C]ode violations supporting the conviction under ·[section] 2800.2 . . . [¶] [t]he Court gave the CALCRIM instruction as set forth in CALCRIM, and there's no requirement in my view to give any further instruction on the underlying [V]ehicle [C]ode ·violations for which there is one point assigned if committed; ·needing three of those to support the jury's finding of guilt on the [section] 2800.2."

## C. Analysis

Quesada argues that, as part of its sua sponte obligation to instruct on elements of the offense, the trial court should have instructed on the elements of each traffic violation the prosecutor relied on. As Quesada recognizes, the determination of what violations are "assigned a traffic violation point" for purposes of section 2800.2 is a question of law for the court. (*People v. Mutuma* (2006) 144 Cal.App.4th 635, 638.) He argues, however, that whether he committed a given traffic violation is a question of fact, and instruction on the elements of the alleged violations was required because the elements are not evident from the description given to the jury. He argues the court should have provided clarifying language as to when the basic speed law is violated, when "special stops" are required and when "crossing yellow or white solid parallel lines" is prohibited. Without such language, Quesada maintains, the jury had no basis for deciding whether he violated any of these sections.

7

Quesada's argument focuses on one of the traffic violations specified in the jury instructions, "Vehicle Code Section 22350 basic speed law." Section 22350 provides: "No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for weather, visibility, the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property." Quesada argues that the jury could not determine whether he violated section 22350 without being informed that it needed to consider factors such as weather, visibility, traffic and roadway conditions in deciding whether his driving was reasonable or prudent. He points out that Castelluccio testified there were "a few" other cars on the road and, because it was around 6:12 p.m. in June, the jury may have assumed it was daylight.

Quesada relies on *People v. Ellis* (1999) 69 Cal.App.4th 1334 (*Ellis*). There, the defendant was found guilty of violating section 23153, subdivision (a) by driving under the influence and concurrently committing an act forbidden by law, identified as "speeding." (*Ellis,* at p. 1337.) *Ellis* agreed and held that the trial court erred in failing to instruct the jury sua sponte on the definition of speeding because "the term speeding, in the context of the basic speed law, is not clear and definite." (*Id.* at p. 1139.) *Ellis* reasoned: "It is commonly understood that speeding, in the context of driving a motor vehicle, means driving a motor vehicle faster than is allowed by law. We believe the most common understanding people have of speeding is driving faster than the posted speed limit. Defendant here was not convicted on a theory that he was driving faster than the maximum posted speed limit, since there was no evidence of the posted speed limit nor was there any meaningful evidence of the defendant's exact speed at the time of

the accident."[4]  (*Ellis,* at pp. 1338-1339, fn. omitted.)  Instead, the conviction in *Ellis* was based on violation of the basic speed law, which requires determinations including whether the speed driven was "*reasonable* in light of the enumerated considerations, such as the traffic on the road" or "*dangerous* to other persons or property."  (*Id.* at p. 1339.)  *Ellis* concluded that "[a]bsent being instructed in these standards for deliberation, jurors may view speeding as occurring anytime one vehicle collides with the rear end of another, regardless of examining questions of circumstance, reasonableness and danger; or they may believe that speeding occurs only when the posted speed limit is exceeded.  Thus we cannot say with full confidence that the term 'speeding,' in the context of a violation of law, in common parlance is regularly associated with driving at a speed greater than is reasonable or prudent, or at a speed which endangers the safety of persons or property."  (*Ibid.*)

The People argue that *Ellis* is distinguishable and further explanation was not needed in the present case because Castelluccio testified to the specific speed limits that Quesada exceeded at several points during the chase and, under *Ellis,* exceeding the posted speed limit is the commonly understood meaning of "speeding."  Quesada acknowledges that "[h]ad the prosecutor relied on driving in excess of the posted speed limit—as opposed to the basic speed law—respondent might have a point," but maintains the People's argument fails because "that is not what happened."

Quesada is correct that the violation identified in the jury instructions was "[b]asic speed law," and that "[s]peeding and violating the basic speed

<hr/>

[4]  The defendant in *Ellis* drove into a car that was stopped at a red light.  (*Ellis, supra,* 69 Cal.App.4th at p. 1336.)

9

law are not legally synonymous." (See *Ellis, supra,* 69 Cal.App.4th at pp. 1338-1339.) But *Ellis* did not discuss whether evidence that the speed the defendant was driving exceeded the maximum posted speed limit would have been sufficient to establish he was "speeding" because there was no such evidence in that case. (*Id.* at pp. 1338-1339.) Here, while the instruction identified the relevant traffic violation as "basic speed law," the theory presented by the prosecutor was that Quesada violated the basic speed law *by exceeding the posted speed limit.* The prosecutor elicited Castelluccio's testimony that Quesada exceeded the posted speed limit on several occasions and that "speeding" is a violation of section 22350, and in her closing argument told the jury that Quesada was "speeding in excess of the speed limit on that road," that there were "multiple violations of speeding at different instances," Quesada "continue[d] to speed" and was "speeding, sometimes 10 miles per hour in excess, sometimes 20 miles per hour in excess." The prosecutor's only reference in argument to the "basic speed law" was to state, like the jury instruction, that "violation of [section] 22350, basic speed law, is one traffic violation point."

To the extent the trial court erred by not instructing the jury on the statutory definition of the basic speed law, Quesada was not prejudiced. Section 22350 prohibits driving "at a speed greater than is reasonable or prudent" in light of the conditions and "in no event at a speed which endangers the safety of persons or property." We fail to see how a reasonable juror could conclude that driving 20 miles above the maximum posted speed limit in a typically busy area would not endanger the safety of persons or property: The risk of being unable to stop in time to avoid collision with a person unexpectedly stepping into the road or a car turning onto it is self-evident.

10

Moreover, the defense never suggested there was any question whether there was a traffic violation for speeding. The primary theory of defense counsel's closing argument was that Quesada was not the driver of the car Castelluccio pursued: Counsel argued that Castelluccio was mistaken in his identification of Quesada as the driver and noted that England found a different person in the driver's seat. Much of counsel's argument questioned Castelluccio's reasons for initially approaching the car and the reliability of his observations of the car and occupants. With respect to traffic violations during the pursuit, counsel attempted to raise a question whether Quesada went through a red light or drove in the opposite lane by eliciting on cross-examination Castelluccio's testimony that he did not mention these actions to dispatch, and in her closing she argued that the violations Castelluccio testified to were "much different than what he was telling dispatch" and that the officer did not report the car driving against traffic or failing to put on a turn signal "because it didn't happen." But defense counsel raised no question about the testimony that Quesada drove at speeds exceeding posted limits. To the contrary, counsel told the jury, "What happened is what that officer testified to, what he said in the radio: · I see speeding." Nothing in the testimony or defense counsel's argument cast any doubt on the prosecutor's claim that one of the traffic violations was the violation of the basic speed law by driving in excess of the posted speed limit.

Quesada does not seriously challenge the instructions pertaining to the other alleged traffic violations. He observes that the instructions did not include "clarifying or amplifying language" as to the three traffic violations identified in addition to "basic speed law"—"[s]ection 22450[, subdivision] (a), special stops required," "[s]ection 21460[, subdivision] (a), crossing yellow or white solid parallel lines," "[s]ection [21453, subdivision] (a), traffic signs,

11

signals and markings"—and asserts that as a result the jury had no basis for deciding whether he committed them.  But he offers no explanation how these violations can be seen as having technical meanings different from the meaning jurors would normally ascribe to them.  In fact, in arguing that the error in failing to define "basic speed law" cannot be found harmless on the ground that three other violations were established, Quesada assumes we likely would conclude that the other terms do not have a technical meaning requiring further explanation.  Specifically, he argues, "[e]ven if this Court determined that 'special stops' and 'traffic sign, signals and markings' have no technical meaning and would have been understood by the jury as driving through a stop sign or red light without stopping—which occurred one time each—the jury was still left without guidance concerning the basic speed law."

Castelluccio's testimony undisputedly established that Quesada failed to stop at a sign and failed to stop at a red light.  No reasonable juror could have difficulty understanding that these acts fell within the traffic violations identified in the instructions as "special stops required" and "traffic signs, signals and markings."  This is especially true in light of the prosecutor's description of these violations as "failing to stop at a stop sign" and "failing to yield at the actual traffic light."

12

We conclude that the instructions adequately described at least three traffic violations assigned a point for purposes of section 2800.2.[5] Accordingly, Quesada has not shown a basis for reversing his conviction.[6]

---

[5] Quesada argues the violation Castelluccio described for driving in the opposite lane of traffic cannot be relied on as one of the three supporting convictions on count 1 because the jury acquitted him on count 2, driving in a lane opposite to the direction of traffic while evading a police officer. Section 2800.4, which defines the offense charged in count 2, provides that the offense is committed "[w]henever a person willfully flees or attempts to elude a pursuing peace officer in violation of [s]ection 2800.1, and the person operating the pursued vehicle willfully drives that vehicle on a highway in a direction opposite to that in which the traffic lawfully moves upon that highway . . . ."

Castelluccio testified that driving in the opposite lane was a violation of section 21460, subdivision (a). The jury instructions referred to section 21460, subdivision (a) as "crossing yellow or white solid parallel lines." There may be some question whether the acquittal necessarily precluded reliance on the identified traffic violation, as the latter referred to crossing parallel lines without explicit reference to driving opposite to traffic, but we need not resolve this point since at least three traffic violations were otherwise established.

[6] The People argue that even without proof of three qualifying traffic violations, the conviction could be upheld as supported by evidence that Quesada was aware of and intentionally ignored a substantial and unjustifiable risk of harm, which is an independent means of proving the willful and wanton disregard for safety required for conviction. (§ 2800.2, subd. (b) ["willful or wanton disregard for the safety of persons or property *includes, but is not limited to*," committing three or more traffic violations during pursuit, italics added]; see *People v. Pinkston* (2003) 112 Cal.App.4th 387, 392-393, 394 [proof of three violations is one way of proving element of willful and wanton disregard].) The trial court instructed the jury that "[a] person acts with wanton disregard for safety when: 1, he is aware that his actions present a substantial and unjustifiable risk of harm; 2, and he intentionally ignores that risk." Quesada acknowledges that the instruction was correct but argues that the prosecutor did not rely on this theory and only argued that Quesada committed three or more traffic violations. Since the conviction is supported on the basis of the violations theory, we need not

13

## II.

### *Quesada Has Not Demonstrated Ineffective Assistance of Counsel.*

Quesada argues he received ineffective assistance of counsel due to his attorney's failure to object to improper opinion testimony from Deputy Castelluccio. He contends the officer improperly opined that Quesada's conduct violated the Vehicle Code sections relied on by the prosecution to establish the traffic violations supporting conviction on count 1. Specifically, Quesada maintains Castelluccio improperly testified that Quesada "failed to yield and accelerated to about 65 miles per hour, in violation of section 22350," "crossed over a double-yellow line, violating section 21460, subdivision (a)," "failed to stop at the stop sign near Bethel Island Road, violating sections 22450, subdivision (a), and 21752, subdivision (a)," "drove across the Bethel Island Bridge, exiting at 65 miles per hour, when the speed limit is 50 miles per hour, another violation of the Vehicle Code," and that his "failure to stop at the red light on East Cypress Road violated section 21453."

"When challenging a conviction on grounds of ineffective assistance, the defendant must demonstrate counsel's inadequacy. To satisfy this burden, the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

---

determine whether it also would be supported on the first theory of willful and wanton driving.

14

"A reviewing court can begin an ineffective assistance of counsel inquiry with either element and need not address both elements if one is not satisfied. ([*Strickland v. Washington* (1984) 466 U.S. 668,] 697 ['[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies']; *In re Marquez* (1992) 1 Cal.4th 584, 602 ['When there has been no showing of prejudice, we need not determine whether trial counsel's performance was deficient'].) Indeed, it is often preferable for a court to dismiss an ineffective assistance of counsel claim solely for lack of prejudice. (*Strickland*, *supra*, 466 U.S. at p. 697 ['If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed']; see *People v. Johnsen* (2021) 10 Cal.5th 1116, 1168.)" (*In re Tellez* (2024) 17 Cal.5th 77, 88.)

" 'Opinion testimony is generally inadmissible at trial. [Citations.] Two exceptions to this rule exist. First, a properly qualified expert, with "special knowledge, skill, experience, training [or] education" may provide an opinion. (Evid. Code, § 801, subd. (b).) The subject matter of such an opinion is limited to "a subject that is sufficiently beyond common experience that [it] would assist the trier of fact." (*Id.*, subd. (a).)' . . . [¶] ' " 'Lay opinion testimony is admissible where no particular scientific knowledge is required, or as "a matter of practical necessity when the matters . . . observed are too complex or too subtle to enable [the witness] accurately to convey them to court or jury in any other manner." [Citations.]' [Citation.]" [Citation.] It must be rationally based on the witness's perception and helpful to a clear understanding of the witness's testimony. (Evid. Code, § 800; [citations].)' " (*People v. Phillips* (2022) 75 Cal.App.5th 643, 682.)

Quesada relies heavily on *People v. Torres* (1995) 33 Cal.App.4th 37, which found defense counsel deficient (albeit without prejudice to the defendant) in failing to object to a police officer, testifying as an expert witness, expressing "opinions about the law, what crimes were committed, and defendant's guilt of those crimes." (*Id.* at p. 43.) The defendant was convicted of first degree murder with the special circumstance of robbery, and two counts of attempted robbery, based on killing a drug dealer from whom he was attempting to "collect rent" for a gang and attempting to take money at gunpoint from a passerby. (*Id.* at p. 42.) After the officer explained how "collecting rent" for a gang worked, he was asked if it was "basically extortion," and said, "[n]ot entirely." (*Id.* at p. 44.) Asked how he would describe it, the officer testified, " 'I would describe it as a robbery. My definition of robbery is taking someone's personal property through force or fear with the immediate danger of something happening to you. I know that is taking place. That is what happened in this particular case.' " (*Ibid.*) He then testified that extortion is taking someone's personal property " 'with a fear of a later threat against yourself,' " was asked, " 'if I have a gun on you right now and demand your money, what is that?' " and responded, " 'It's a robbery.' " (*Ibid.*)

The *Torres* court explained that a witness may not express an opinion as to the definition of a crime because "[i]t is for the court to instruct the jury as to what constitutes an offense" (*Torres, supra,* 33 Cal.App.4th at p. 46); may not express an opinion as to the defendant's guilt or innocence because "the trier of fact is as competent as the witness to weigh the evidence and draw a conclusion on the issue of guilt" (*id.* at pp. 46-47); and, for the same reasons, may not express an opinion as to whether a crime has been committed (*id.* at pp. 47-48.) The court concluded that competent counsel

16

would have objected to the officer's testimony because the distinction between robbery and extortion was a crucial issue in the case, as killing the victim in the course of an attempted robbery would constitute a special circumstance and felony murder verdict while a killing in the course of attempted extortion would not. (*Id.* at p. 49.) *Torres* held there was no reasonable probability the result would have been different absent counsel's error, however, because the evidence established all the elements of attempted robbery and did not establish all the elements of extortion. (*Id.* at p. 52.)

Quesada argues the situation is the same here: In his view, Castelluccio testified to his opinion on the meaning of the statutes defining the traffic violations Quesada was alleged to have committed and on the ultimate conclusion on Quesada's guilt, and there was no tactical reason for failing to object because the testimony was not favorable to Quesada and counsel did not concede any of the traffic violations. Quesada maintains the failure to object was prejudicial because the evidence of guilt was not overwhelming and, as the trial court failed to properly instruct the jury on the requirements for the traffic violations, the jury had no basis for deciding whether Quesada committed them.

We do not see Castelluccio's testimony the same way. In each of the examples Quesada cites, the officer first described the act he observed Quesada perform: He testified that he saw Quesada drive at a speed that exceeded the maximum speed for the road on which he was driving; he saw Quesada fail to stop at a stop sign; he saw Quesada fail to stop at a red light. In response to the prosecutor's further questions, Castelluccio then testified that the act violated a certain section of the Vehicle Code. The first portion of Castelluccio's testimony, relating his personal observations of Quesada's various actions, was unobjectionable. (*People v. Dalton* (2019) 7 Cal.5th 166,

17

231 [testimony based on witness's personal observation properly admitted]; *People v. Murphy* (2022) 80 Cal.App.5th 713, 732-733 [eyewitness testimony about vehicle speed based on personal observation].) The second portion stated facts independent of the observations in this particular case: The act of driving in excess of the maximum speed limit, crossing a double yellow line, failing to stop at a stop sign, failing to stop at a red light, violates the specified statute. This testimony did not offer an opinion similar to that of the witness in *Torres,* who stated his personal definition of the charged crime—"*I would describe it as* a robbery" and "*my definition* of robbery—and said the defendant's conduct "in this particular case" came within that definition. (Italics added.) Quesada does not argue Castelluccio's testimony that a given act violated a given section of the Vehicle Code improperly stated a point of law; to the extent it could be challenged on this basis, there would have been little point in objecting, as the jury was instructed that the conduct at issue was a traffic violation. The question whether Quesada actually engaged in each act Castelluccio testified he observed and thereby committed the violation, was left to the jury, as were the questions whether Quesada committed at least three of the violations identified in the instructions and, if so, whether the prosecution proved the additional elements of evading a peace officer.

At best for Quesada, if defense counsel had objected to the questions and answers he challenges and the trial court had sustained these objections, the jury still would have been left with Castelluccio's testimony that during the pursuit, he saw Quesada drive in excess of the speed limit several times, saw him cross a double yellow line, saw him fail to stop at a stop sign and saw him fail to stop at a red light. The jury instructions adequately conveyed that each of these acts constituted a one-point traffic violation. There is no

18

reasonable probability the jury would not have concluded Quesada committed these violations absent Castelluccio's testimony that they were violations. Accordingly, Quesada was not prejudiced by any deficiency in counsel's performance and therefore has not demonstrated ineffective assistance of counsel.

## DISPOSITION

The judgment is affirmed.

19

STEWART, P. J.


We concur.


RICHMAN, J.


MILLER, J.


*People v. Quesada* (A168520)